**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Malcolm FRAZIER, Defendant– Appellant.**

No. 91–5865.

United States Court of Appeals, Fourth Circuit.

Argued April 10, 1992.

Decided June 12, 1992.

Leonard A. Kaplan, Asst. Federal Public Defender, Charleston, W.Va., for defendant-appellant.

Phillip Blair Scott, Asst. U.S. Atty. (Michael W. Carey, U.S. Atty., on the brief), Charleston, W.Va., for plaintiff-appellee.

Before WILKINSON and LUTTIG, Circuit Judges, and KIDD, Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

## OPINION

LUTTIG, Circuit Judge:

Malcolm Frazier appeals a sentencing decision by the United States District Court for the Southern District of West Virginia denying him an acceptance of responsibility reduction pursuant to U.S.S.G. § 3E1.1. He challenges the district court's denial of the reduction as improper under the guideline itself and unconstitutional under the Fifth Amendment. We conclude that the district court fully complied with the requirements of U.S.S.G. § 3E1.1 in denying appellant an acceptance of responsibility reduction and that appellant was not denied his rights under the Fifth Amendment. We therefore affirm.

### I.

Sometime after May 18, 1990, appellant stole a shipment of 200 American Express Money Orders, each payable up to $300, that was en route to Boca Raton, Florida. J.A. at 3. At some point after July 25, 1990, he also stole 1,000 Great Western Money Orders, each payable up to $5,000, that were en route to Deerfield Beach, Florida. *Id.* Appellant thus stole money orders with a total potential face value of $5,060,000. All of the stolen money orders

were issued by the American Express Travel Related Service Company. *Id.* at 56.

Appellant and his accomplices thereafter used a check-writing machine and typewriter to forge these money orders and then, using false identification, cashed the money orders throughout the eastern United States, Puerto Rico, and Canada. *Id.* at 77–78. By the early fall of that year, over $159,000 of the money orders had been cashed. *Id.* at 16.

Eduardo Rivero was one of appellant's accomplices in this scheme. In August, 1990, appellant and Rivero traveled to Vermont and Montreal, Canada, and successfully cashed $54,000 in money orders. *Id.* at 5, 80–82. In September, the two men traveled to Charleston, West Virginia, where appellant intended to establish his base of operations. *Id.* at 5. Rivero was arrested on September 27, 1990, after having attempted to cash three of the money orders in the Charleston area: one at the First Empire Federal Savings and Loan branch in Dunbar, one at the One Valley Bank branch in South Charleston, and one at the American Automobile Association office in Charleston. *Id.* at 4, 37–39.

Pursuant to a plea agreement, *see id.* at 40–42, appellant conditionally pled guilty on March 22, 1991, to three counts of aiding and abetting the utterance of forged securities in violation of 18 U.S.C. §§ 2, 513(a), relating to the three money orders cashed in the Charleston area, and to one count of conspiracy to make, utter, and possess forged securities in violation of 18 U.S.C. §§ 371, 513(a).[1] J.A. at 3539, 59–60. He also stipulated to the uttering of ten forged money orders to the Vermont National Bank so that they would comprise part of the relevant conduct for purposes of sentencing. *Id.* at 58. In return, the United States Attorney for the District of Vermont agreed not to prosecute him for any violations of federal law arising from his negotiation of those specific money orders. *Id.* at 41. At his Rule 11 hearing, appellant admitted that he stole the 1,200 money orders. *Id.* at 77–78.

The presentence report filed with the district court did not recommend that appellant receive the acceptance of responsibility reduction available under U.S.S.G. § 3E1.1.[2] At that time, 56 of the $300 money orders and 605 of the $5,000 money orders were still unaccounted for, representing an outstanding potential loss of $3,041,800. *Id.* at 28. Noting that appellant "has knowledge of, and in all likelihood control over, negotiable instruments that may result in significant losses yet he refuses to convey that knowledge deferring [sic] instead to acknowledge conduct of which the government is already aware," the report concluded that he had failed to show an affirmative acceptance of responsibility. *Id.* at 8; *see also id.* at 7.

As detailed in a Supplemental Addendum to the Presentence Report, Frazier subsequently returned an additional 469 of the $5,000 money orders, leaving money orders worth potentially $698,800 in circulation. *Id.* at 28, 104–05. However, because the probation officer believed that "Frazier [was] using the instruments as a negotiation tool," he continued to recommend against the acceptance of responsibility reduction. *Id.* at 28.

The district court conducted a sentencing hearing on July 26, 1991, at which the acceptance of responsibility reduction was the only contested issue. *Id.* at 91. Appellant argued at this hearing that he had done everything he could to return or account for all of the remaining money orders, even though 136 of the $5,000 money orders and 56 of the $300 money orders remained outstanding. *Id.* at 104–05. Believing that the recovery of the missing money orders was "an important aspect of

---

**1.** The pleas were conditioned solely on Frazier's appeal of the denial of his *pro se* motion to dismiss, an issue not before us. J.A. at 60.

**2.** Section 3E1.1 provides:

(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.

. . . .

(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

U.S.S.G. § 3E1.1.

the adjustment for acceptance of responsibility," the court continued the hearing, stating:

> It seems to me some analysis needs to be made of what took place, and then the court informed of what efforts have been made to recover them. I want to see all 192 of those money orders, or in the event that some remain missing, I want to know the rationale that covers the stated loss.

*Id.* at 109.

Per the court's instructions, appellant prepared a detailed account of what had happened to the missing money orders. *Id.* at 143–59. Insofar as is relevant here, appellant stated that he had given the twenty $300 money orders numbered between 75200 and 75219 "to another individual from Tampa, Florida." *Id.* at 143. At an August 23, 1991, sentencing hearing, the court asked appellant to reveal the identity of that individual. *Id.* at 116. Appellant refused to answer on the grounds that identification of the individual might expose appellant to further prosecution because the plea agreement did not include an immunity agreement as to any of the substantive uttering offenses other than those arising out of the ten money orders cashed in Vermont. *Id.* at 117. Appellant also refused the court's request to name his accomplices in this scheme. *Id.* at 117–18.

The Government argued with respect to the acceptance of responsibility reduction that appellant admitted stealing all of the money orders; that while the indictment did not charge specific substantive crimes with relation to each of the 1,200 money orders, "the conspiracy count subsumes the possession of [all of them]," *id.* at 125–26;

and that appellant is therefore responsible for procuring the return of the money orders. Appellant contended that although all of the money orders should be considered in computing the relevant conduct for sentencing, they were not part of the conspiracy alleged in count one, which included only the distributions in Vermont and Charleston. *Id.* at 126. Thus, "as to this conspiracy as alleged, the money orders are accounted for." *Id.* at 127.

For the reasons discussed below, the district court denied appellant the acceptance of responsibility reduction. *Id.* at 129–31. Appellant challenges that denial on appeal, first, on the grounds that in contravention of U.S.S.G. § 3E1.1, the court adopted a *per se* rule requiring total cooperation with the Government in order to receive the reduction. Second, appellant argues that the court applied section 3E1.1 so as to unconstitutionally penalize him for exercising his Fifth Amendment right against self-incrimination.

## II.

■ Appellant first contends that the district court "set up and applied a *per se* rule—no complete assistance, no acceptance—without regard to whether Frazier had indicated his acceptance in other ways and without addressing *why* only incomplete assistance was rendered." Appellant's Br. at 7. According to appellant, the district court is required to "consider all factors that are relevant to acceptance of responsibility, *e.g.,* Frazier's guilty plea, his remorse and contrition, all of the information and assistance that he did provide, his refusal to identify the person to whom he gave the 15 money orders, and his reasons for refusing." *Id.*[3]

---

3. Application note 1 to section 3E1.1 provides that in determining whether a defendant has accepted responsibility,

> appropriate considerations include, but are not limited to, the following:
> (a) voluntary termination or withdrawal from criminal conduct or associations;
> (b) voluntary payment of restitution prior to adjudication of guilt;
> (c) voluntary and truthful admission to authorities of involvement in the offense and related conduct;

> ....
> (e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;
> ....
> (g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

U.S.S.G. § 3E1.1, comment. (n. 1). As appellant notes, we have previously stated that application note 1 contains merely a "non-exhaustive list of acts a defendant may perform which *could* indicate acceptance of responsibility."

■ A district court is not required to appraise ritualistically each and every factor in application note 1. Note 1 provides that the enumerated factors are merely "appropriate considerations" for the court in deciding whether to grant a sentence reduction. The district court in this case based its decision denying appellant a reduction in sentence on a number of factors—some of which would have supported a sentence reduction and others that counseled against a reduction.

As factors weighing against reduction, the court noted that appellant has not "voluntarily made payment of restitution in any amount to this point"; that he has "failed in very significant part" to "fully assist the authorities in the recovery of the fruits of the offense," declining "to reveal to whom those money orders have been turned over"; and that he "has simply turned over to the authorities what it appears that the defendant wished to do in the hope that he might do just enough to gain acceptance of responsibility." J.A. at 129–31. In favor of a reduction, the court considered both that appellant "ha[d] come in and pled guilty to the charges in this case" and that he "ha[d] recovered and turned over some of the money orders." *Id.* at 129–30.

It is clear from the record, therefore, contrary to appellant's suggestion, that the district court did not base its sentence reduction decision on the fact alone that appellant did not fully cooperate with authorities by providing the name of the person in Florida to whom he had given the remaining money orders; rather, the court reached a reasoned decision after weighing factors both favorable to and against a reduction in appellant's sentence. Accordingly, we reject appellant's argument that he was denied a sentence reduction in violation of U.S.S.G. § 3E1.1.

*United States v. White,* 875 F.2d 427, 432 (4th Cir.1989) (emphasis added); *see also United States v. Van Dyke,* 895 F.2d 984, 987 (4th Cir.), cert. denied, — U.S. —, 111 S.Ct. 112, 112 L.Ed.2d 82 (1990).

4. Appellant does not challenge the facial constitutionality of section 3E1.1, conceding that such

### III.

■ Appellant next argues that the district court unconstitutionally penalized him for exercising his Fifth Amendment privilege against self-incrimination by conditioning the acceptance of responsibility reduction in part on his identification of the individual in Florida to whom he gave money orders.[4] He asserts that the provision of such information might subject him to criminal prosecution for additional substantive offenses arising out of the conspiracy.

■ The Fifth Amendment does not insulate a defendant from all "difficult choices" that are presented during the course of criminal proceedings, or even from all choices that burden the exercise or encourage waiver of the Fifth Amendment's right against self-incrimination. *See Chaffin v. Stynchcombe,* 412 U.S. 17, 30–31, 93 S.Ct. 1977, 1985, 36 L.Ed.2d 714 (1973) (the Constitution does not "forbid[ ] every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights"); *Corbitt v. New Jersey,* 439 U.S. 212, 218, 99 S.Ct. 492, 497, 58 L.Ed.2d 466 (1978) (cases "clearly establish[ ] that not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid"). The Amendment forbids the government only from compelling an individual to be a witness against himself. U.S. Const. Amend. V (no person "shall be *compelled* in any criminal case to be a witness against himself") (emphasis added); *see also Lefkowitz v. Cunningham,* 431 U.S. 801, 806, 97 S.Ct. 2132, 2136, 53 L.Ed.2d 1 (1977) ("touchstone" of the Fifth Amendment's privilege is compulsion); *United States v. Monia,* 317 U.S. 424, 427, 63 S.Ct. 409, 410, 87 L.Ed. 376 (1943).[5]

challenges have been rejected by the circuits. Appellant's Br. at 5 n. 3.

5. "The Amendment not only protects [an] individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where

The question before us, therefore, is whether conditioning the acceptance of responsibility reduction in U.S.S.G. § 3E1.1 in part upon full cooperation with the Government *compels* a convicted defendant to provide evidence against himself in violation of the Fifth Amendment.

Appellant, without discussion, urges us to adopt the rule set forth in *United States v. Watt*, 910 F.2d 587, 591–93 (9th Cir. 1990),[6] that denial of an acceptance of responsibility reduction because of the defendant's refusal to assist authorities in the recovery of the fruits and instrumentalities of a crime penalizes the defendant for assertion of his right to remain silent and thus "compels" his self-incrimination. *See also United States v. Oliveras*, 905 F.2d 623, 626 (2d Cir.1990) (violation of Fifth Amendment to require defendant to accept responsibility "for crimes other than those to which he pled guilty or of which he has

been found guilty"); *United States v. Perez–Franco*, 873 F.2d 455 (1st Cir.1989) (same).[7] Appellant would have us remand to the district court for resentencing with instructions that the court not consider appellant's refusal to identify the individual in Florida to whom he gave the remaining money orders in deciding whether to award appellant a two-level reduction for acceptance of responsibility.

The Government, also with no discussion, urges that we instead follow those circuits which have held that the section 3E1.1 reduction is merely a benefit, or an act of leniency, the denial of which because the defendant refuses to provide potentially incriminatory information does not penalize a defendant's exercise of his Fifth Amendment rights.[8] Appellee's Br. at 13 n. 7; *see, e.g., United States v. Mourning*, 914 F.2d 699 (5th Cir.1990); *United States v.*

the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973). The privilege therefore is fully applicable in the sentencing phase of a criminal proceeding. *See Estelle v. Smith*, 451 U.S. 454, 462–63, 101 S.Ct. 1866, 1873, 68 L.Ed.2d 359 (1981).

**6.** *But see United States v. Herrera–Figueroa*, 918 F.2d 1430, 1433 (9th Cir.1990) (denial of reduction for refusal to speak to probation officer does not constitute penalty for exercise of Fifth Amendment right) (citing *United States v. Skillman*, 922 F.2d 1370, 1378–79 (9th Cir.1991), which also held that denial of two-point acceptance of responsibility reduction because of refusal to speak to probation officer did not penalize exercise of Fifth Amendment privilege); *United States v. Gonzalez*, 897 F.2d 1018, 1021 (9th Cir.1990) ("[T]he reduction provided for in Section 3E1.1 is merely a benefit which may be accorded to a defendant if he is able to make the necessary showing. The possibility of leniency in the statute does not make denial of lenient treatment impermissible where the district court determines that the defendant has failed to exhibit the requisite contrition.") (facial challenge to U.S.S.G. § 3E1.1).

**7.** Appellant also cites *United States v. Frierson*, 945 F.2d 650, 660 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992), in support of his Fifth Amendment claim. Presumably, appellant relies upon *Frierson* only for its holding that "a denied reduction in sentence is a penalty in the context of Fifth Amendment jurisprudence," *id.* at 660, because the Third Circuit ultimately held that Frierson's allegedly incriminatory statements had not been

compelled, *id.* at 660–62. The Third Circuit's suggestion that the Fifth Amendment would be violated were a court to base a denial of the reduction on a defendant's refusal to provide information on aggravated related conduct and acts beyond the offense of conviction is, by its own admission, *dictum. Id.* at 662–63.

**8.** The government implicitly embraces the commonly held position that the conditioning of the receipt of a benefit upon the relinquishment of a constitutional right can never constitute compulsion within the meaning of the Fifth Amendment. In several cases, however, the Supreme Court has held that the conditioning of a benefit upon relinquishment of the Fifth Amendment right to remain silent constituted an impermissible penalty on assertion of that right. *See, e.g., Minnesota v. Murphy*, 465 U.S. 420, 435, 104 S.Ct. 1136, 1146, 79 L.Ed.2d 409 (1984) (loss of benefit of probation); *Cunningham*, 431 U.S. at 807, 97 S.Ct. at 2136 (forfeiture of future political office); *Turley*, 414 U.S. at 77–84, 94 S.Ct. at 322 (loss of benefit of future contracting privileges). As discussed *infra*, we believe that under the case-by-case inquiry required by the Court's decisions, *see, e.g., Chaffin*, 412 U.S. at 32, 93 S.Ct. at 1985, the single, and determinative question is whether the choice presented to the defendant is of such a character that he is effectively forced to surrender his right to remain silent. *See Garrity v. New Jersey*, 385 U.S. 493, 496, 87 S.Ct. 616, 618, 17 L.Ed.2d 562 (1967) (the question is "whether the [defendant] was deprived of his 'free choice to admit, to deny, or to refuse to answer'") (quoting *Lisenba v. California*, 314 U.S. 219, 241, 62 S.Ct. 280, 292, 86 L.Ed. 166 (1941)).

*Trujillo,* 906 F.2d 1456 (10th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 396, 112 L.Ed.2d 405 (1990); *United States v. Henry,* 883 F.2d 1010 (11th Cir.1989); [9] *cf. United States v. White,* 869 F.2d 822, 826 (5th Cir.) *(per curiam)* ("The fact that a more lenient sentence is imposed upon a contrite defendant does not establish a corollary that those who elect to stand trial are penalized."), *cert. denied,* 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 and *cert. denied,* 493 U.S. 1001, 110 S.Ct. 560, 107 L.Ed.2d 555 (1989); *see also* cases cited *supra* note 6.[10] For the reasons that follow, we find ourselves in agreement with those decisions that hold that the Fifth Amendment is not offended by presenting a defendant with the choice between providing potentially incriminating information and receiving the two-level sentence reduction in U.S.S.G. § 3E1.1 on the one hand, and asserting his Fifth Amendment right to remain silent and forgoing the possibility of a sentence reduction on the other.

 The Government "may not impose substantial penalties because [an individual] elects to exercise his Fifth Amendment right not to give incriminating testimony against himself." *Cunningham,* 431 U.S. at 805, 97 S.Ct. at 2135; *see also Murphy,* 465 U.S. at 434, 104 S.Ct. at 1146 (quoting *Cunningham,* 431 U.S. at 805, 97 S.Ct. at 2135). Whether the withholding of a sentence reduction because a defendant chooses to assert his Fifth Amendment right not to incriminate himself constitutes a "substantial penalty" on the exercise of that right requires that we examine two distinct but analytically related lines of Supreme Court authority and determine whether the burden on a defendant's right to remain silent resulting from conditioning the section 3E1.1 reduction on the defendant's waiver of his Fifth Amendment right is more akin to the burden imposed by the choices under the first or the second line of these cases.

In the "so-called 'penalty' cases," *see Murphy,* 465 U.S. at 434, 104 S.Ct. at 1146, the Supreme Court has invalidated governmental action that it held constituted "compulsion" within the meaning of the Fifth Amendment. The Court has held that self-incriminatory statements that are provided under threat of removal from public office are compelled and therefore inadmissible in subsequent criminal proceedings. *Garrity,* 385 U.S. at 497, 87 S.Ct. at 618 ("The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent.").[11] It has held that there is

**9.** *But see United States v. Rodriguez,* 959 F.2d 193 (11th Cir.1992) *(per curiam).*

**10.** The Government initially contends that we need not reach the constitutional issue because the district court "did not hold [appellant's] invocation of the Fifth Amendment against him, [but] rather ... merely failed to reward defendant for his calculated and manipulative course of conduct" by finding that "he had not genuinely accepted responsibility for his conduct." Appellee's Br. at 12–13. It is clear from the record, however, both that appellant's failure to name the individual in Florida was a factor in the district court's decision to deny appellant a sentence reduction and that appellant's refusal to identify the individual was based upon his belief that he would expose himself to further prosecution if he identified the person. We therefore disagree with the Government that the issue need not be reached.

**11.** In the companion case of *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) (plurality opinion), the Court held that not only is compelled testimony inadmissible under *Garrity,* but the attempt to compel one to make

incriminating statements itself may be prohibited. *See also Gardner v. Broderick,* 392 U.S. 273, 279, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968) ("[T]he mandate of the great privilege against selfincrimination does not tolerate the attempt, regardless of its ultimate effectiveness, to coerce a waiver of the immunity it confers on penalty of the loss of employment."). The Court thus refused to permit the disbarment of an attorney for having refused to waive his privilege against self-incrimination. 385 U.S. at 516, 87 S.Ct. at 628 ("The threat of disbarment and the loss of professional standing, professional reputation, and of livelihood are powerful forms of compulsion to make a lawyer relinquish the privilege.").

In *Gardner,* the Court clarified the interrelation of *Garrity* and *Spevack,* holding that officials directly responsible to the state (in that case police officers), unlike lawyers, could be required, on penalty of dismissal, "to answer questions specifically, directly, and narrowly relating to the performance of [their] official duties," so long as they were not required to waive the use immunity guaranteed by *Garrity.* 392 U.S. at 278, 88 S.Ct. at 1916; *see also Cun-*

no "difference of constitutional magnitude between the threat of job loss to an employee of the State, and a threat of loss of contracts to a [government] contractor," *Turley,* 414 U.S. at 83, 94 S.Ct. at 325 and thus that the threatened loss of state contracting privileges for failure to provide self-incriminating information is also a penalty that compels surrender of the Fifth Amendment privilege, *id.* at 85, 94 S.Ct. at 326 ("[A]nswers elicited upon the threat of the loss of employment are compelled."). It has held. that the immediate removal from political party office and the prohibition against holding political office thereafter for five years for the refusal to answer grand jury questions or for the refusal to waive immunity from the use of his testimony in a later criminal proceeding penalized the officeholder for asserting his Fifth Amendment right:

> The threatened loss of such widely sought positions, with their power and perquisites, is inherently coercive. Additionally, compelled forfeiture of these posts diminishes appellee's general reputation in the community.
>
> There are also economic consequences; appellee's professional standing as a practicing lawyer would suffer by his removal from his political offices under these circumstances.... Many such offices carry substantial compensation.

*Cunningham,* 431 U.S. at 807, 97 S.Ct. at 2136. And most recently, the Court has observed in *dictum* that there is a "substantial basis" in its cases for concluding that "if the State, either expressly or by implication, asserts that invocation of the privilege [against self-incrimination] would lead to revocation of probation, it would have created the classic penalty situation." *Murphy,* 465 U.S. at 435, 104 S.Ct. at 1146 (*dictum*).[12]

In a parallel line of cases that does not even cite the "penalty" cases, the Supreme Court has rejected claims that the offer of lower sentences in exchange for guilty pleas impermissibly compels a defendant to incriminate himself. In *Corbitt,* for example, the Court upheld a New Jersey statutory scheme pursuant to which a defendant who pled *non vult* to a murder, rather than proceed to a jury trial, could receive at the discretion of the sentencing judge the second degree murder sentence of up to thirty years rather than the mandatory life imprisonment term for first degree murder. Corbitt had challenged the scheme as an unconstitutional burden upon his right against compelled self-incrimination. 439 U.S. at 216, 99 S.Ct. at 496. Citing a long line of Supreme Court cases upholding the use of plea bargains to encourage guilty pleas in the face of Fifth Amendment challenges, the Court stated:

> The cases in this Court ... have clearly established that not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid. Specifically, there is no *per se* rule against encouraging guilty pleas. We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea. The plea may obtain for the defendant the possibility or certainty not only of a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty, but also a lesser penalty than that *required* to be imposed after a guilty verdict by a jury.

*Id.* at 218–20, 99 S.Ct. at 497–98 (citations and footnotes omitted). The Court rejected the claim that the possibility of "a proper degree of leniency in return for guilty pleas," *id.* at 223, 99 S.Ct. at 499, amounts to a penalty against a defendant's assertion of his Fifth Amendment right, holding that

> withholding the possibility of leniency from [those who go to trial] cannot be equated with impermissible punishment so long as our cases sustaining plea bar-

*ningham,* 431 U.S. 801, 97 S.Ct. 2132; *Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation,* 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968).

**12.** While the penalty cases recited above concerned the imposition of substantial economic

penalties for exercise of the Fifth Amendment right, the Court has made clear that "direct economic sanctions and imprisonment are not the only penalties capable of forcing the self-incrimination which the Amendment forbids." *Cunningham,* 431 U.S. at 806, 97 S.Ct. at 2136.

gaining remain undisturbed. Those cases, as we have said, unequivocally recognize the constitutional propriety of extending leniency in exchange for a plea of guilty and of not extending leniency to those who have not demonstrated those attributes on which leniency is based. *Id.* at 223–24, 99 S.Ct. at 500;[13] *see Bordenkircher v. Hayes,* 434 U.S. 357, 365, 98 S.Ct. 663, 669, 54 L.Ed.2d 604 (1978) (prosecutor's offer to accept a guilty plea to a lesser charge "no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution"); *Chaffin,* 412 U.S. at 31, 93 S.Ct. at 1985 ("Although every [plea bargain] has a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable attribute of any legitimate system which tolerates and encourages the negotiation of pleas."); *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (guilty plea in order to avoid possible death penalty not compulsion under Fifth Amendment); *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970) (plea not compelled merely because induced by fear of possible death penalty); *Brady v. United States,* 397 U.S. 742, 751, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747 (1970) ("We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged."); *see also Alabama v. Smith,* 490 U.S. 794, 802–03, 109 S.Ct. 2201, 2206, 104 L.Ed.2d 865 (1989).

We have no difficulty concluding that the choice presented to a defendant under U.S.S.G. § 3E1.1 by conditioning the availability of the section's two-level reduction on the waiver of his Fifth Amendment right is more analogous to (and constitutionally indistinguishable from) the choice confronting the defendants in the plea bargain cases than to the choice faced by the plaintiffs in the public employment penalty cases.

First, unlike the choice presented the plaintiffs in the penalty cases, the choice with which appellant was faced is an "incidental consequence" of a legitimate governmental practice of encouraging, through leniency in sentencing, both cooperation with law enforcement authorities and contrition on the part of the defendant. *Chaffin,* 412 U.S. at 31–33, 93 S.Ct. at 1985–86 ("incidental consequence" of "legitimate practice" of jury sentencing is that it "may require the accused to choose whether to accept the risk of a higher sentence or to waive his rights [to a jury trial]"); *see also Jenkins v. Anderson,* 447 U.S. 231, 236–38, 100 S.Ct. 2124, 2128–29, 65 L.Ed.2d 86 (1980). The acceptance of responsibility reduction essentially codifies the judicial practice of sentencing more leniently defendants who evidence contrition and cooperate with law enforcement authorities:

> The reduction of offense level provided by this section recognizes legitimate societal interests. For several reasons, a defendant who clearly demonstrates a recognition and affirmative acceptance of personal responsibility for the offense and related conduct by taking, in a timely fashion, one or more of the actions listed above . . . is appropriately given a lower offense level. . . .

U.S.S.G. § 3E1.1, comment. (backg'd); *see also United States v. Belgard,* 694 F.Supp. 1488, 1497 (D.Ore.1988) (guidelines recog-

---

**13.** In *Crampton v. Ohio,* decided with *McGautha v. California,* 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), the Court upheld against a Fifth Amendment challenge Ohio's single-trial capital murder procedure, under which a defendant is tried and sentenced in the same proceeding and is forbidden to remain silent during the guilt phase of the trial but plead his case during the sentencing phase. The Court reiterated even

in that context that "[t]he criminal process, like the rest of the legal system, is replete with situations requiring the making of difficult judgments as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *Id.* at 213, 91 S.Ct. at 1470 (citation omitted).

nize "societal interest in the reduction of crime, restitution, early withdrawal from criminal activity, ... and the increased potential for rehabilitation among those who feel and show true remorse for their antisocial conduct"), *aff'd sub nom. United States v. Summers*, 895 F.2d 615 (9th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 389, 112 L.Ed.2d 399, and *cert. denied*, —— U.S. ——, 111 S.Ct. 164, 112 L.Ed.2d 129 (1990). This is indisputably a long-standing, legitimate governmental practice. In fact, in a pre-guidelines case that presented precisely the same issue before us today, *Roberts v. United States*, 445 U.S. 552, 557–58, 100 S.Ct. 1358, 1363, 63 L.Ed.2d 622 (1980),[14] the Court took note not only of the "deeply rooted social obligation" of citizens to cooperate with authorities so as to avoid the concealment of crime, but also, specifically, of the propriety of considering a defendant's cooperation in the sentencing decision:

> Few facts available to a sentencing judge are more relevant to the likelihood that a defendant will transgress no more, the hope that he may respond to rehabilitative efforts to assist with a lawful future career, and the degree to which he does or does not deem himself at war with his society [than are those relating to the defendant's cooperation with authorities].

*Id.* at 558, 100 S.Ct. at 1363 (citations omitted); *see also Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966); *Henry*, 883 F.2d at 1012 ("Since long before the enactment of the guidelines, American courts have been allowed to take into account the defendant's acceptance of the responsibility for his wrongs as a consideration in sentencing.") (citations omitted); *Mourning*, 914 F.2d at 707 ("this guideline simply 'formalizes and clarifies' a tradition of leniency toward contrite defendants") (citing *Roberts*, 445 U.S. at 558, 100 S.Ct. at 1363).

The purpose of conditioning the reduction on full acceptance of responsibility thus is not to discourage assertion or force waiver of the defendant's right to remain silent or to obtain incriminating information to facilitate future prosecution, but rather, to formalize and further a legitimate governmental practice. *See Chaffin*, 412 U.S. at 33 n. 20, 93 S.Ct. 1986 n. 20 ("if the only objective of a state practice is to discourage the assertion of constitutional rights it is patently unconstitutional") (citations omitted); *see also Cunningham*, 431 U.S. at 807, 97 S.Ct. at 2136 (appellee faced "grave consequences solely because he refused to waive immunity from prosecution and give self-incriminatory testimony"); *Sanitation Men*, 392 U.S. at 284, 88 S.Ct. at 1919–20 (New York sought "not merely an accounting" from its employees, "but testimony" that "could be used to prosecute them"); *Gardner*, 392 U.S. at 278, 88 S.Ct. at 1916 (police officer dismissed "solely for his refusal to waive" his Fifth Amendment privilege). The resulting burden on the Fifth Amendment right therefore is neither "needless" nor "arbitrary." *See United States v. Jackson*, 390 U.S. 570, 583, 88 S.Ct. 1209, 1217, 20 L.Ed.2d 138 (1968) (invalidating statute that "needlessly encourage[d]" guilty pleas and waiver of jury trial); *Corbitt*, 439 U.S. at 219 n. 9, 99 S.Ct. at 497 n. 9 (noting that Court's decisions after *Jackson* have "sustained practices that, although encouraging guilty pleas, were not 'needless' ") (citing *Hayes*, 434 U.S. 357, 98 S.Ct. 663; *Chaffin*, 412 U.S. 17, 93 S.Ct. 1977; *Alford*, 400 U.S. 25, 91 S.Ct. 160; *Parker*, 397 U.S. 790, 90 S.Ct. 1458; *Brady*, 397 U.S. 742, 90 S.Ct. 1463).

Second, unlike the choice in the penalty cases, the choice confronting defendants in appellant's position is not "likely to exert such pressure upon an individual as to disable him from making a free and rational choice." *Garrity*, 385 U.S. at 497, 87 S.Ct. at 618 (quoting *Miranda*, 384 U.S. at 464–

---

**14.** Petitioner there claimed that the district court's consideration at sentencing of his refusal to cooperate with the Government by naming the suppliers of heroin to the conspiracy in which he was involved violated his right against self-incrimination. The Court ultimately did not reach the Fifth Amendment issue, however, because petitioner had not asserted his Fifth Amendment right before the district court. 445 U.S. at 559–61, 100 S.Ct. at 1363–64.

65, 86 S.Ct. at 1623); *see also Cunningham*, 431 U.S. at 806, 97 S.Ct. at 2136 (decision whether to forfeit political office or waive Fifth Amendment right presents a choice "capable of forcing the self-incrimination which the Amendment forbids").[15] At most, by refusing to waive his right to remain silent, a convicted defendant such as appellant forfeits the possibility of a two-level reduction in the sentence he otherwise will serve. We believe it unlikely that similarly situated defendants will feel compelled to provide incriminatory information by the incentive of a possible two-level reduction.[16] The pressure to waive the Fifth Amendment right that results from this incentive certainly cannot be equated with the pressure that comes with a threatened loss of livelihood. Indeed, we believe that it will almost invariably be less than (but even where greater than, constitutionally equivalent to) that inherent in the typical offer of a lesser charge or shorter sentence in return for a guilty plea, where the defendant is forced to choose between a certain "conviction" of an offense with which he is then only charged but the prospect of a lesser sentence if he waives his Fifth Amendment right, and the possibility of an acquittal if he instead asserts his right and proceeds to trial. If withholding the possibility of leniency from those who refuse to plea is not considered impermissible punishment—and it is not—then we fail to see how withholding the leniency offered in U.S.S.G. § 3E1.1 from those who refuse

to waive their right to remain silent can be thought punitive.

*See Corbitt*, 439 U.S. at 223, 99 S.Ct. at 500 ("withholding the possibility of leniency from [those who go to trial] cannot be equated with impermissible punishment"). Such conditioning of the acceptance of responsibility reduction may *encourage* defendants to provide information that could prove incriminatory, but it does not *compel* them to do so.[17]

We are not indifferent to our sister circuits which have held that denial of the acceptance of responsibility under the circumstances discussed herein unconstitutionally penalizes a defendant's assertion of his Fifth Amendment right against self-incrimination. These courts, however, have relied exclusively on the Supreme Court's penalty cases, without even citation to the plea bargain line of cases. *See, e.g., Frierson*, 945 F.2d at 657–60; *Perez-Franco*, 873 F.2d at 462–63. Based only upon the penalty cases, they appear to have assumed that essentially any choice that has even the incidental effect of encouraging waiver of the Fifth Amendment right penalizes assertion of that right. *See, e.g., United States v. Watt*, 910 F.2d at 592 ("[A] sentencing court cannot consider *against* a defendant any constitutionally protected conduct.") (emphasis added). From the plea bargain cases, however, it is evident that this is simply not the rule. As the Supreme Court has frequently observed:

**15.** "In each of the so-called 'penalty' cases, the State not only compelled an individual to appear and testify, but also sought to induce him to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.'" *Murphy*, 465 U.S. at 434, 104 S.Ct. at 1145–46 (quoting *Cunningham*, 431 U.S. at 806, 97 S.Ct. at 2136).

**16.** The two level reduction in appellant's offense level would have reduced appellant's sentencing range from fifty-seven to seventy-one months to forty-six to fifty-seven months, approximately a one-year average reduction in the sentence that he otherwise must serve.

**17.** That the choice with which appellant was confronted gave rise to no more compulsion

than that present in a typical plea bargain is manifest from the record. Appellant made the conscious decision not to accept a plea agreement granting him immunity with respect to substantive offenses arising out of the other money orders that were part of the conspiracy because he understood that, with immunity, he would be required to testify as to the activities of his accomplices and coconspirators. His counsel explained at the sentencing hearing, "[appellant] made a decision not to plead to a standard plea agreement and not to provide the government further information on other individuals, and certainly an element of that was his own safety and the safety of his wife, and he may have to take the consequences of that." J.A. at 124.

The criminal process, like the rest of the legal system, is replete with situations requiring the making of difficult judgments' as to which course to follow. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose.

*Crampton,* 402 U.S. at 213, 91 S.Ct. at 1454, 1470 (citation omitted). We are satisfied that the choice confronting defendants in appellant's position, even if difficult, is not a choice forbidden by the Constitution.

Accordingly, we hold that conditioning the acceptance of responsibility reduction on a defendant's waiver of his Fifth Amendment privilege against self-incrimination does not penalize the defendant for assertion of his right against self-incrimination in violation of the Fifth Amendment.[18]

Finding neither error nor constitutional infirmity in the district court's denial of the acceptance of responsibility reduction, the judgment below is

AFFIRMED.

---

**18.** The Government cites *United States v. Gordon,* 895 F.2d 932 (4th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990), as holding that the denial of the acceptance of responsibility reduction does not penalize a defendant. Appellee's Br. at 13 n. 7. There is no question that in *Gordon* we held that U.S.S.G. § 3E1.1 is applicable only where the defendant accepts responsibility for all of his relevant criminal conduct and does not apply where he accepts responsibility only for the count to which he has pled guilty. 895 F.2d at 936; *see also Mourning,* 914 F.2d at 705–06; *Frierson,* 945 F.2d at 655–56. We rejected the contrary hold-ing in *Perez–Franco,* 873 F.2d at 463. 895 F.2d at 936. It is less than clear, however, that the court addressed and rejected Gordon's Fifth Amendment claim. Even if it did address the issue, there is a substantial question as to whether the court's Fifth Amendment analysis was *dictum,* given that the district court in that case apparently did not rely on Gordon's failure to admit intent to distribute in refusing the reduction and because Gordon did not accept responsibility for the count on which he was convicted. 895 F.2d at 942 n. 8 (Murnaghan, J., dissenting).