8 F.3d 822
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Gene STARK, Defendant-Appellant.
 No. 93-5111.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: September 16, 1993.
Decided: October 20, 1993.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Samuel G. Wilson, District Judge. (CR-92-11-R)
 Harry F. Hambrick, Jr., Roanoke, Virginia, for Appellant.
 E. Montgomery Tucker, United States Attorney, Jean B. Hudson, Assistant United States Attorney, Roanoke, Virginia, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before WIDENER and PHILLIPS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Richard Gene Stark pleaded guilty to conspiracy with intent to distribute marijuana, in violation of 21 U.S.C.A. § 846 (West 1993 Supp.). He raises three sentencing issues on appeal. We affirm.
 
 I.
 
 2
 On February 7, 1990, a package received in the Roanoke Post Office by express mail was determined to contain ten pounds of marijuana. It was addressed to Jacob Creighton of Roanoke, with a return address in Arizona. The Postal Inspector determined that the return address named a fictitious individual, and that Stark's brother lived at that address. On March 8, 1990, two packages with that Arizona return address were received in the Roanoke Post Office. One was addressed to Creighton, the other to William Waller. Drug-sniffing dogs alerted to both packages, and federal search warrants were obtained for the packages. One package contained 7.5 pounds of marijuana, the other held 9.7 pounds. William and Tina Creighton and William Waller were arrested.
 
 
 3
 William Creighton agreed to assist the government in its investigation. He informed them that the drugs came from Stark and his father, and alleged that they regularly dealt large amounts of marijuana. Creighton taped conversations with the Starks. He told Stark that he had been arrested, and asked for help with his legal fees, in accord with a prearranged agreement. Stark sent $1000 for the fees, and the pair discussed a plan for Stark to send ten pounds of marijuana to help Creighton raise additional money for fees. The plan was not carried out.
 
 
 4
 Creighton had moved to Virginia in May 1989, because he viewed it as a promising drug market. He had been involved in drug dealing with the Starks since 1988. Creighton brought four pounds of marijuana with him when he moved to Virginia. From June 1989, to December 1989, he returned to Arizona every four to six weeks to pay Stark for the prior load and pick up six to ten more pounds for distribution. Normally, Stark met Creighton at the airport. Creighton made all his financial arrangements with Stark, although he had occasional dealings with Stark's father. When Creighton tired of returning to Arizona, Stark suggested mailing the marijuana in return for a money order from Creighton.
 
 
 5
 Stark and his father were indicted on five counts of distribution of marijuana, use of the mails to distribute marijuana, and conspiracy. Stark signed a plea agreement with the government and pleaded guilty to one count of the indictment. At sentencing, the district court sentenced Stark to forty-one months imprisonment followed by three years of supervised release, and a $7500 fine.
 
 II.
 
 6
 Stark contests the district court's determination of relevant conduct under the sentencing guidelines. He argues that the evidence was insufficient to support the quantity of drugs for which he was sentenced and that the court misapplied the concept of relevant conduct. Stark asserts that the court improperly considered conduct outside the dates of the charged conspiracy to determine the quantity of drugs used to compute his baseline offense level.
 
 
 7
 When the amount of drugs for which a defendant is to be held responsible is in dispute, the district court must make an independent resolution of the issue at sentencing. United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993). See U.S.S.G. § 6A1.3(b).[1] The government bears the burden of proving by a preponderance of the evidence the quantity of drugs to be considered as relevant conduct. United States v. Williams, 977 F.2d 866, 870 (4th Cir. 1992), cert. denied, 61 U.S.L.W. 3583 (U.S. 1993). This determination is a factual one, which we review for clear error. United States v. Hicks, 948 F.2d 877, 881 (4th Cir. 1991).
 
 
 8
 The government established, and the district court found, that Stark conveyed or conspired to convey at least 63.6 pounds of marijuana toCreighton during the latter's time in Virginia.[2] That amount resulted in a base offense level of 18. U.S.S.G. § 2D1.1(c)(13). Although Stark argues that he should not be held responsible for the packages mailed by his father, the drugs mailed in those packages were clearly foreseeable to him. Mailing the marijuana was Stark's idea. The February and March packages were within the scope of the conspiracy to restock Creighton every four to six weeks. Creighton and the Starks were all generally aware of the actions of the others.
 
 
 9
 The district court carefully evaluated the evidence as to quantity of drugs and relevant conduct. He considered Stark's attacks on Creighton's credibility, and did reject a portion of Creighton's testimony regarding Stark's use of weapons. However, the court determined that Creighton's consistent testimony, substantiated in part by taped conversations and mailed packages, was more credible than Stark's testimony, which the court found inconsistent and incredible in many respects. This finding is not clearly erroneous.
 
 
 10
 Stark also asserts that the presentence report used prior, unrelated conspiracies to determine relevant conduct under guideline section 1B1.3. As we have determined that the district court only looked to Stark's activities within the charged conspiracy, Stark's argument is without merit.
 
 III.
 
 11
 Stark challenges the denial of a reduction in sentence for acceptance of responsibility. U.S.S.G. § 3E1.1. This decision is a factual one, reviewable under a clearly erroneous standard. United States v. Gordon, 895 F.2d 932, 937 (4th Cir.), cert. denied, 498 U.S. 846 (1990). Stark asks us to reconsider the requirement in Gordon that a defendant accept responsibility for relevant conduct not mentioned in the indictment because it forces the defendant to incriminate himself. We rejected this argument in United States v. Frazier, 971 F.2d 1076,1087 (4th Cir. 1992), cert. denied, 61 U.S.L.W. 3480 (U.S. 1993), and we see no reason to change our view. Stark's claim is thus without merit.
 
 
 12
 The district court denied Stark credit for acceptance of responsibility because of his three positive drug tests and his many missed drug screening appointments. The court found that Stark had obviously not withdrawn from criminal activity. Stark also denied that he was a drug dealer and insisted that he could not have obtained the amounts of drugs involved in this case, despite evidence to the contrary. U.S.S.G. § 3E1.1(a). The court's finding is not clearly erroneous.
 
 IV.
 
 13
 The district court increased Stark's offense level two steps because the court found him to be an organizer or leader in the conspiracy. U.S.S.G. § 3B1.1(c). Stark argues that his role in the conspiracy did not warrant this enhancement.
 
 
 14
 The district court's findings on this issue should be upheld unless clearly erroneous, giving due deference to the district court's application of the guidelines to the facts of the case. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). In this case, Stark normally met Creighton at the airport, where Creighton paid him for the prior load. Mailing the packages was Stark's idea. Stark provided financial assistance and support for Creighton when he was arrested. On these facts, the district court properly relied on Stark's decisionmaking authority and his involvement in planning the offense. U.S.S.G. § 3B1.1, comment. (n.3). Thus, the district court's finding is not clearly erroneous.
 
 
 15
 For the reasons stated, we affirm Stark's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 United States Sentencing Commission, Guidelines Manual (Nov. 1990)
 
 
 [2]
 Part of Stark's complaint results from the statement in the presentence report that "a conservative estimate of the amount of marijuana involved in the instant offense is 210.2 pounds." Despite that statement, however, the presentence report used the 63.6 pound figure in determining the base offense level