978 F.2d 341
 UNITED STATES of America, Plaintiff-Appellee,
v.
Marcos M. COJAB, Defendant-Appellant.
 No. 91-3903.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 27, 1992.
Decided Oct. 27, 1992.
Rehearing and Rehearing En Banc
Denied Dec. 28, 1992.
 
 Steven M. Biskupic, Asst. U.S. Atty. (argued), Milwaukee, Wis., for plaintiff-appellee.
 Michael J. Fitzgerald (argued), Coffey, Coffey & Geraghty, Milwaukee, Wis., for defendant-appellant.
 Before MANION and KANNE, Circuit Judges, and LEE, District Judge.*
 KANNE, Circuit Judge.
 
 
 1
 Marcos Cojab was charged with one count of conspiracy to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, and 18 U.S.C. § 2, and one count of possessing with the intent to distribute five hundred grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He was convicted on the first count and was subsequently sentenced to a 405 month term of imprisonment and a fine of $25,000. Cojab now appeals from that sentence. For the following reasons, we affirm.
 
 
 2
 Cojab was the organizer and leader of a Miami-based cocaine distribution ring which employed a number of couriers and targeted its spheres of influence in New Jersey, Wisconsin and Bermuda. Rayborn Hendrix was the man responsible for managing Cojab's Wisconsin segment of the "business." Cojab would supply Hendrix with the cocaine, and he would in turn sell the cocaine to Charles Lee, a local distributor in southeastern Wisconsin. However, unbeknownst to Cojab and Hendrix, Lee began working as an informant for the Drug Enforcement Administration ("DEA"). In 1989, he introduced two undercover DEA agents to Hendrix as potential cocaine buyers who hoped to purchase over five kilograms of cocaine. A single kilogram, as a test, was to be exchanged prior to the full shipment.
 
 
 3
 On November 10, 1990, a test kilogram of cocaine was brought from Florida to Wisconsin. Hendrix inspected the cocaine at a Holiday Inn, and he left with approximately half the kilogram so that he could show it to the undercover agents. The very next day, the DEA returned to the Holiday Inn with a search warrant. The remaining cocaine was found inside a guest room of the hotel, as well as the two marijuana cigarettes and a slip of paper with Cojab's pager number on it. Hendrix was quickly arrested, but he agreed to cooperate with the DEA to set up Cojab in a larger transaction. Cojab, who was in Florida awaiting extradition to New Jersey on the homicide charges of one of his other couriers, negotiated the deal from his cell in the Dade County Jail. Again, a one-kilogram deal was arranged. After instructions were given to the undercover agents by Cojab's wife, Liset, two other couriers--Frank Valdes and Richard Ruiz--delivered the kilogram to the agents. Valdes, Ruiz and Cojab's wife were arrested shortly thereafter.
 
 
 4
 Cojab pleaded guilty to the conspiracy count, and the possession count was subsequently dismissed. At sentencing, the district court ruled that Cojab was not entitled to a two-level reduction for acceptance of responsibility under the Sentencing Guidelines and, further, that a four-level increase was warranted since Cojab was an organizer or leader of criminal activity which involved five or more participants. The court alternatively held that Cojab's criminal activity qualified as "otherwise extensive"--a finding which would independently justify the four-level upgrade. Accordingly, the district court sentenced Cojab to 405 months imprisonment and a fine of $25,000.
 
 
 5
 Cojab first contends that the district court erred by refusing to grant him a two-level reduction for "acceptance of responsibility" under section 3E1.1 of the Sentencing Guidelines. Section 3E1.1 allows for a two-point reduction in the defendant's base offense level if the defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." The district court held that Cojab did not merit such a reduction because he entered his plea of guilty solely as an attempt to dismiss charges against his wife. The district court also found that Cojab failed to provide any financial information to the probation office. Cojab now argues on appeal that by refusing to grant the reduction, the district court improperly applied the acceptance of responsibility provision in a manner penalizing him for exercising his fifth amendment privilege against self-incrimination.
 
 
 6
 We review challenges to a district court's sentencing determination under a deferential standard. United States v. Golden, 954 F.2d 1413, 1416 (7th Cir.1992). To the extent that the sentencing determination turns on questions of fact, the district court's findings will not be disturbed unless we are left "with the definite and firm conviction that a mistake has been committed." Id.; United States v. Vopravil, 891 F.2d 155, 157 (7th Cir.1989); United States v. Herrera, 878 F.2d 997, 1000 (7th Cir.1990). A question involving the interpretation of a Guidelines term, by contrast, is a matter of law subject to de novo review. Golden, 954 F.2d at 1416; United States v. Teta, 918 F.2d 1329, 1332 (7th Cir.1990).
 
 
 7
 As Cojab correctly points out, the Supreme Court has repeatedly held that the government may not impose a penalty on a person for asserting the fifth amendment privilege. Minnesota v. Murphy, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984); Lefkowitz v. Cunningham, 431 U.S. 801, 804-08, 97 S.Ct. 2132, 2135-37, 53 L.Ed.2d 1 (1977); Lefkowitz v. Turley, 414 U.S. 70, 77-84, 94 S.Ct. 316, 322-25, 38 L.Ed.2d 274 (1973); Uniformed Sanitation Men v. Commissioner of Sanitation, 392 U.S. 280, 284-85, 88 S.Ct. 1917, 1919-20, 20 L.Ed.2d 1089 (1968); Gardner v. Broderick, 392 U.S. 273, 276-79, 88 S.Ct. 1913, 1915-16, 20 L.Ed.2d 1082 (1968). Among the penalties specified in these cases are, inter alia, the loss of a job, loss of state contracts, loss of future contracting privileges with the state, loss of political office, loss of the right to run for political office in the future and revocation of probation. All of the above are "penalties" that cannot be imposed on the exercise of the privilege. However, we believe that the denial of the two-level reduction at issue here is more properly characterized as a "denied benefit," rather than a "penalty." See United States v. Mourning, 914 F.2d 699 (5th Cir.1990); United States v. Gordon, 895 F.2d 932 (4th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990); United States v. Trujillo, 906 F.2d 1456 (10th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 396, 112 L.Ed.2d 405 (1990); United States v. Henry, 883 F.2d 1010 (11th Cir.1989).[1] Section 3E1.1 may well affect how criminal defendants choose to exercise their constitutional rights. But "not every burden on the exercise of a constitutional right, and not every encouragement to waive such a right is invalid." Corbitt v. New Jersey, 439 U.S. 212, 219, 99 S.Ct. 492, 493-97, 58 L.Ed.2d 466 (1978). To hold the acceptance of responsibility provision unconstitutional would be to say that defendants who express genuine remorse for their actions can never be rewarded at sentencing. This the Constitution does not require. United States v. Henry, 883 F.2d 1010 (11th Cir.1989).
 
 
 8
 Having concluded as such, there is little question that the record amply supports the district court's determination. Entry of a guilty plea, combined with truthful admission of involvement in the offense and related conduct, constitutes significant evidence of acceptance of responsibility, but this evidence may be outweighed by conduct inconsistent with acceptance of responsibility. United States v. DeFilippis, 950 F.2d 444, 447 (7th Cir.1991). Cojab pleaded guilty in order to obtain the dismissal of charges against his wife, yet despite this plea, there was no additional evidence of Cojab's affirmative recognition of his guilt. Had he provided the probation office with the requested financial information, he may well have given the district court a factual basis for the reward. He did not. Thus, we conclude that the district court did not err in denying Cojab the two level reduction.
 
 
 9
 Cojab also contends that the district court erred in its upward adjustment of his sentence by four levels under section 3B1.1 of the Sentencing Guidelines, which provides that the defendant's base offense level may be increased by four levels if he was an organizer or leader of criminal activity that involved five or more participants who were criminally culpable, or if the activity was "otherwise extensive." The district court below found that there were five participants involved in this criminal venture. It alternatively held that even if the number of criminal participants was fewer than five, Cojab organized criminal activity that was "otherwise extensive." Cojab now argues on appeal that the district court's inclusion of him as a "participant" was erroneous, thereby making the number of participants only four. He also alleges that the district court erroneously interpreted "otherwise extensive" as it applies to his sentence.
 
 
 10
 The record reveals considerable question as to precisely how many criminal participants were involved in Cojab's ring. But whether there were at least five criminal participants is effectively irrelevant, for Cojab's ring certainly qualifies as "otherwise extensive." As construed by this court, the "otherwise extensive" language of section 3B1.1 is generally intended to go beyond criminal participants and include those who may not be criminally culpable or charged with any crime. Application Note 2, U.S.S.G. § 3B1.1; United States v. Boula, 932 F.2d 651 (7th Cir.1991); United States v. DeCicco, 899 F.2d 1531, 1536 (7th Cir.1990). Here, Cojab's venture included the help of: Hendrix, who managed his Wisconsin operations; Charles Lee, who regularly distributed the Wisconsin shipments; one "Sylvia," who attempted to coordinate one of Cojab's deals in Miami; and Richard Ruiz, who was with Valdes during the delivery of a kilogram to the undercover agents. Also involved were Deborah Owens and Victor Alongi--both of New Jersey--and "a number of individuals arrested in Bermuda during the summer of 1990." Thus, given the above, we conclude that the district court did not err in determining that Cojab's criminal activity was "otherwise extensive."
 
 
 11
 Accordingly, the district court's sentencing of Marcos Cojab is AFFIRMED.
 
 
 
 *
 The Honorable William C. Lee, District Judge for the Northern District of Indiana, is sitting by designation
 
 
 [1]
 But see United States v. Perez-Franco, 873 F.2d 455 (1st Cir.1989); United States v. Oliveras, 905 F.2d 623 (2d Cir.1990)