**UNITED STATES of America, Plaintiff–Appellee,**

v.

**George CLEMONS, Jr., Defendant–Appellant.**

No. 92–6285.

United States Court of Appeals, Sixth Circuit.

Argued June 24, 1993.

Decided July 19, 1993.

Steven H. Cook, Asst. U.S. Atty. (briefed), David G. Dake, U.S. Atty., Office of U.S. Atty., Chattanooga, TN, Marvin N. Smith, Asst. U.S. Atty. (argued), U.S. Attys. Office, Greeneville, TN, for plaintiff-appellee.

Perry H. Piper (argued and briefed), John F. Carroll, Federal Defender Services of Eastern Tennessee, Inc., Chattanooga, TN, for defendant-appellant.

Before: MILBURN and BOGGS, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendant George Clemons, Jr., appeals from the sentence he received following his guilty plea to a single count of conspiracy to distribute, and to possess with the intent to distribute, cocaine and Dilaudid, a violation of 21 U.S.C. § 846. On appeal, the issues are (1) whether the district court's factual findings regarding the quantity of drugs possessed by defendant were clearly erroneous, and (2) whether the district court's denial of a two-level reduction for acceptance of responsibility deprived defendant of his right against self-incrimination under the Fifth Amendment by requiring that defendant accept responsibility, not just for the conduct mentioned in the indictment, but for all related criminal conduct. For the reasons that follow, we affirm.

## I.

In March 1992, an undercover officer contacted defendant and negotiated for the purchase of four bags of cocaine. After defendant set the price for the cocaine at $100.00, a runner named Herman Strickland delivered the drugs to the undercover officer. This arrangement continued through eight purchases of Dilaudid and cocaine from the defendant. In each case, the undercover officer negotiated the price and the amount of the drugs with defendant Clemons, and in each case the drugs were delivered by one of three persons who worked as couriers for Clemons. On May 7, 1992, law enforcement

officers arrested defendant Clemons and Herman Strickland.

In due course a ten-count indictment was returned against defendant, his wife, and Herman Strickland. Pursuant to a plea agreement, defendant Clemons pled guilty to Count I of the indictment, the conspiracy count, and the remaining counts of the indictment were dismissed against him.

At the sentencing hearing, the government offered the testimony of Herman Strickland against defendant. Strickland testified in general about his operations with defendant, including a series of drug deliveries he made at defendant's request during the period of October 1991 through mid-March 1992, i.e., before the conspiracy, as described in the indictment, was alleged to have begun. In computing defendant's base offense level, the district court combined the quantity of drugs purchased by the undercover officer with a conservative estimate of the drugs it found defendant to have distributed according to the testimony of Herman Strickland. The court denied defendant a two-level reduction in sentence for acceptance of responsibility because, while defendant admitted his involvement in the sales to the undercover officer, he did not admit the related conduct concerning which Herman Strickland had testified.

As a result of these computations, the district court arrived at an applicable guideline range of 63 to 78 months. Defendant was sentenced within that range to 71 months of imprisonment, and this timely appeal followed.

## II.

### A.

Defendant first argues that the district court erred in computing the amount of drugs chargeable to defendant in that it included therein an estimate of the Dilaudid and cocaine (converted to marijuana equivalence under the Drug Equivalency Table) distributed by defendant. The amount of drugs chargeable to a defendant is a question of fact reviewable by this court under the clearly erroneous standard. *United States v. Walton,* 908 F.2d 1289, 1300–01 (6th Cir.),

cert. denied, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 and 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 541 and 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990) ("A district court's decision on the amount of cocaine a defendant is to be held accountable for is a finding of fact which must be accepted by a court of appeals unless clearly erroneous."); 18 U.S.C. § 3742(e). The United States bears the burden of proving the quantity of drugs chargeable to a defendant, but only by preponderance of the evidence. *United States v. Robinson,* 904 F.2d 365, 371 (6th Cir.), *cert. denied,* 498 U.S. 946, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990). When a district court finds itself unable to determine exact drug quantities, it may make a reasonable estimate of quantity, provided that estimate is supported by a preponderance of the evidence. *United States v. Wilson,* 954 F.2d 374, 377 (6th Cir.1992).

Defendant does not contend that the district court misused the applicable United States Sentencing Guidelines ("U.S.S.G."), §§ 1B1.3(a), 2D1.1, or 2D1.4. Neither does he contest the district court's conversions carried out under the Drug Equivalency Table. Instead, defendant insists that the government failed to prove the additional drug dealing, or "relevant conduct" under U.S.S.G. § 1B1.3, by a preponderance of the evidence. Specifically, he argues that the testimony of Herman Strickland, upon which the government relied, was unworthy of belief.

At the sentencing hearing, Strickland testified that from October 1991 to March 1992 he made drug deliveries on the average of five days a week. Ordinarily he would deliver one or two Dilaudids and two or three packets of cocaine to a customer. Before making its ruling, the district court engaged Strickland in the following colloquy:

THE COURT: You delivered drugs how many days a week, you say? I heard you say three, four or five times a week, or how many times a week was it?

THE WITNESS: It would average out to about five times a week.

THE COURT: About five times a week. Okay. About five times a week, and then—and so that was—so about once a

day maybe? How does—I'm just trying to get an idea of how many times you actually delivered drugs during this period of time.

THE WITNESS: It might be two or three times a day. Two or three times a day, maybe. I make one in the morning maybe and in the afternoon, at night. It would be two or three times a day.

THE COURT: And on these deliveries, most of them you say there was some cocaine and some Dilaudid?

THE WITNESS: Yes sir.

THE COURT: And the smallest quantity of Dilaudid you would deliver would be one Dilaudid?

THE WITNESS: Yes.

THE COURT: And the smallest quantity of cocaine you delivered was one of those packages?

THE WITNESS: Yes.

J.A. 92–93.

From this testimony, the district court "very conservatively estimated" the drugs to be charged against the defendant in addition to those proven in support of the indictment:

And so, basically what I'm saying is this: From October 1, 1991 through, let's say March 15, 1992, actually it might have been the 19th but we'll just say March 15th, that's five-and-a-half months, which is 22 weeks, roughly, he testified that he sold or delivered quantities of both cocaine and Dilaudid during that period of time roughly—well, he testified to different things. This is where my conservative estimate comes in.

I'm just going to say he delivered them five times a week. He testified that he delivered up to four or times [sic] a day to both the probation officer and here in Court, but I'm just going to say five times a week. That's 110 sales during that period of time. I'm going to use the minimum amount of drugs that he sold, that he could have sold during that period time according to his testimony, that being those $25 packets of cocaine, which is .1 gram of cocaine, and the one Dilaudid tablet, I'm going to use one Dilaudid tablet. That's .05 grams of hydromorphone.

J.A. 135–36. The net effect of the district court's estimate of the drugs distributed by defendant prior to the onset date of the conspiracy was to raise defendant's base offense level from 18 to 20.

The court's estimate was very conservative indeed. The court found that Strickland delivered drugs only once a day, five days a week, although Strickland testified that he delivered drugs up to five times daily. The court also conservatively estimated each delivery to contain only one Dilaudid pill and one bag of cocaine, whereas Strickland testified that his average delivery was one or two Dilaudid pills and two or three packets of cocaine. Moreover, the district court completely ignored all deliveries by the two other couriers working for defendant Clemons, and it estimated that each delivery of Dilaudid weighed only .05 grams, whereas the toxicology report showed that the pills sold by defendant actually weighed between .075 and .09 grams each.

The district court's estimate, based as it is on Strickland's testimony, the drugs actually purchased by undercover officers, and the toxicology report, is amply supported by the evidence in this case. Defendant's contention that Strickland's testimony should not be believed is meritless, considering that the testimony was uncontradicted. On review, this court must "give due regard to the opportunity of the district court to judge the credibility of the witnesses ...," 18 U.S.C. § 3742(d). When that is done in this case, there is no error, much less any clear error, in the district court's findings as to the amount of drugs chargeable to defendant for sentencing purposes.

**B.**

■ Defendant also argues that the district court erred in denying him a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Ordinarily, a district court's determination of a defendant's acceptance of responsibility is a question of fact subject to the clearly erroneous standard of review. *United States v. Chambers*, 944 F.2d 1253, 1270 (6th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1217, 117 L.Ed.2d 455 *and* —— U.S. ——, 112 S.Ct.

1680, 118 L.Ed.2d 397 (1992). In this case, however, defendant argues that the district court violated his Fifth Amendment privilege not to incriminate himself when it refused to award him the two-level reduction for acceptance of responsibility because he had not admitted the drug dealing he engaged in before the onset date of the indictment as described in the testimony of Herman Strickland. Defendant thus contends that § 3E1.1 is unconstitutional as interpreted by the district court. That argument presents a question of law reviewable de novo by this court. *Whitney v. Brown,* 882 F.2d 1068, 1071 (6th Cir.1989).

In ruling on this question of acceptance of responsibility, the district court stated:

> With respect to acceptance of responsibility, the Court finds that, of course, the Defendant takes the position that there were no drugs dealt with other than those alleged in the indictment in this case. That is not a voluntary and truthful admission of his involvement in the offense and related conduct, because the Court finds, and you can take this up to the 6th Circuit, Mr. Carroll, of course, but I find that in order to get acceptance of responsibility, to get credit for that, of course, number one, the Defendant bears the burden. That burden has not been borne here.
>
> But, number two, that has to be borne with respect to not only the charged conduct, but also related conduct. I have found that the additional drug quantities are, indeed, relevant conduct under Section 1B.13(a)(2) [sic, 1B1.3(a)(2)] of the sentencing guidelines, because they are part of the same course of conduct or common scheme or plan as the offense of conviction.

J.A. 138–39.

■ At the time of defendant's sentencing, U.S.S.G. § 3E1.1(a) allowed the district court to reduce the base offense level by two levels where a defendant clearly demonstrated "a recognition and affirmative acceptance of personal responsibility for his criminal conduct...." Application Note 1(c) explained that an appropriate consideration for the court would be whether the defendant made a "voluntary and truthful admission to authorities of involvement in the offense *and*

*related conduct....*" (Emphasis added). District courts are required to apply the guidelines in effect at the time of sentencing. *United States v. French,* 974 F.2d 687, 698 (6th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1012, 122 L.Ed.2d 160 *and* — U.S. —, 113 S.Ct. 1431, 122 L.Ed.2d 798 (1993); *United States v. Nagi,* 947 F.2d 211, 213 (6th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992); 18 U.S.C. § 3553(a)(4).

Initially, there is a substantial question about whether defendant has waived his constitutional attack on the district court's interpretation of § 3E1.1 by failing to raise the question below. Defendant certainly sought the two-level reduction allowed by § 3E1.1 and objected to the presentence report's conclusion that he should not receive it. In his written objection, he stated:

> The law requires only that the defendant accept responsibility for the charge to which he has pled guilty. *United States v. Oliveras,* 905 F.2d 623 (2d Cir.1990); *United States v. Perez–Franco,* 873 F.2d 455, 459 (1st Cir.1989). Clemons pled guilty in this case and admitted that he played a *substantial* role in the conspiracy and that he played a part in every one of the drug allegations set forth in the Indictment. These admissions are an acceptance of responsibility for the charge to which Clemons had pled guilty and he should be given a 2 point reduction for his acceptance of responsibility.

J.A. 50–51.

Nowhere in this objection does defendant openly contend that any of his constitutional rights would be violated were he required to accept responsibility for any related conduct beyond the charge to which he pled guilty. There is no mention of the Fifth Amendment or the Constitution, and the district court did not address it in its ruling. However, the two cases cited by defendant in his objection hold that it would violate a defendant's Fifth Amendment privilege against self-incrimination to require him to admit involvement in conduct other than that to which he pled

guilty, *i.e.*, relevant or related conduct.[1] Therefore, we will address the constitutional issue presented.

We begin by noting a deep division among the circuits over this question. Several circuits, for example, have held that conditioning the two-level reduction for acceptance of responsibility on admissions of responsibility for conduct of which a defendant was not convicted would violate the defendant's Fifth Amendment rights. *United States v. Frierson*, 945 F.2d 650, 659–60 (3d Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992) ("[A]n increase in sentence or a denied reduction in sentence is a penalty in the context of Fifth Amendment jurisprudence."); *United States v. Piper*, 918 F.2d 839, 841 (9th Cir.1990) (per curiam) ("[W]e agree with *Perez–Franco* that a defendant may controvert evidence of other criminal conduct at sentencing without thereby losing the reduction for acceptance of responsibility."); *United States v. Oliveras*, 905 F.2d 623, 632 (2d Cir.1990) (per curiam) ("[A] defendant cannot be denied the reduction in sentence provided by § 3E1.1 ... because he refused to make self-incriminating statements relating to conduct included in counts to which he had not pled guilty...."); *United States v. Perez–Franco*, 873 F.2d 455, 463 (1st Cir.1989) ("[Section 3E1.1] can only be interpreted to mean that a defendant who has made a plea agreement must accept responsibility solely for the counts to which he is pleading guilty.").

These cases generally follow a line of Supreme Court cases holding that the government "may not impose substantial penalties because [an individual] elects to exercise his Fifth Amendment right not to give incriminating testimony against himself." *Lefkowitz v. Cunningham*, 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977). In *Cunningham*, the Supreme Court held that the forfeiture of the right to hold political office in the future was an impermissible penalty to attach to the exercise of the Fifth Amendment right to remain silent. Similarly, in *Garrity v. New Jersey*, 385 U.S. 493, 497, 87

S.Ct. 616, 619, 17 L.Ed.2d 562 (1967), the Court held that incriminatory statements made under threat of removal from public office were compelled and inadmissible in subsequent criminal proceedings. "The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent." *Id.*

In *Minnesota v. Murphy*, 465 U.S. 420, 435, 104 S.Ct. 1136, 1146, 79 L.Ed.2d 409 (1984), the Court indicated that there was a "substantial basis" in its cases for concluding that "if the State, either expressly or by implication, asserts that invocation of the [Fifth Amendment] privilege would lead to revocation of probation, it would have created the classic penalty situation." Further, in *Lefkowitz v. Turley*, 414 U.S. 70, 85, 94 S.Ct. 316, 325, 38 L.Ed.2d 274 (1973), the Court held that the threatened loss of state contracting privileges for failure to provide self-incriminating statements was a penalty that unconstitutionally compelled surrender of the Fifth Amendment privilege. *See also Gardner v. Broderick*, 392 U.S. 273, 279, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968) ("[T]he mandate of the great privilege against self-incrimination does not tolerate the attempt, regardless of its ultimate effectiveness, to coerce a waiver of the immunity it confers on penalty of the loss of employment.").

Several circuits avoid the impact of the Supreme Court's so-called "penalty cases" by distinguishing between a "denied benefit" and a "penalty." These circuits hold that denial of the two-level reduction does not constitute a penalty and thus does not implicate the Fifth Amendment. *See United States v. Cojab*, 978 F.2d 341, 343 (7th Cir. 1992); *United States v. Saunders*, 973 F.2d 1354, 1362 (7th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1026, 122 L.Ed.2d 171 (1993); *United States v. Kleinebreil*, 966 F.2d 945, 953–54 (5th Cir.1992); *United States v. Mourning*, 914 F.2d 699, 707 (5th Cir.1990); *United States v. Rogers*, 899 F.2d 917, 924 (10th Cir. (1990), *opinion withdrawn and superseded*, 921 F.2d 975 (10th Cir.

---

1. U.S.S.G. § 1B1.3 (Nov.1991) is captioned, "Relevant Conduct." U.S.S.G. § 3E1.1, comment. (n. 1(c)) (Nov.1991), refers to "related conduct." In the context of this case, the terms mean the same thing.

1990); *United States v. Gordon*, 895 F.2d 932, 936 (4th Cir.), *cert. denied*, 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990); *United States v. Henry*, 883 F.2d 1010, 1011 (11th Cir.1989) (per · curiam); *United States v. White*, 869 F.2d 822, 826 (5th Cir.) (per curiam), *cert. denied*, 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 *and* 493 U.S. 1001, 110 S.Ct. 560, 107 L.Ed.2d 555 (1989).

Many of these cases also follow the Supreme Court's reasoning in *Corbitt v. New Jersey*, 439 U.S. 212, 218, 99 S.Ct. 492, 497, 58 L.Ed.2d 466 (1978), to the effect that "not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right is invalid." In *Corbitt*, the Court held that a New Jersey homicide statute, which provided for mandatory punishment of life imprisonment upon conviction by a jury of first-degree murder, but also allowed the possibility of a sentence of less than life imprisonment to a defendant who entered a plea of *non vult*, did not impose an unconstitutional burden on a defendant's Fifth Amendment rights.[2]

A well-reasoned case dealing with the Supreme Court's "penalty cases" and finding them inapposite is *United States v. Fraizer*, 971 F.2d 1076, 1084 (4th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1028, 122 L.Ed.2d 173 (1993). In *Fraizer*, the Fourth Circuit, after a review of the "penalty cases," rejected *Oliveras*, *Frierson*, and *Perez–Franco* and held

> that the Fifth Amendment is not offended by presenting a defendant with the choice between providing potentially incriminating information and receiving the two-level sentence reduction in U.S.S.G. § 3E1.1 on the one hand, and asserting his Fifth Amendment right to remain silent and foregoing the possibility of a sentence reduction on the other.

*Id.* at 1082. The court noted the existence in Supreme Court jurisprudence of "a parallel line of cases that does not even cite the 'penalty' cases ..." in which the Supreme

Court "rejected claims that the offer of lower sentences in exchange for guilty pleas impermissibly compels a defendant to incriminate himself." *Id.* at 1083.

Citing *Corbitt*, 439 U.S. at 219, 99 S.Ct. at 220 (1978) ("We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea."); *Bordenkircher v. Hayes*, 434 U.S. 357, 365, 98 S.Ct. 663, 669, 54 L.Ed.2d 604 (1978) (prosecutor's offer of a guilty plea to a lesser charge "no more than openly presented the defendant with the unpleasant alternatives of foregoing trial or facing charges on which he was plainly subject to prosecution."); *Chaffin v. Stynchcombe*, 412 U.S. 17, 31, 93 S.Ct. 1977, 1985, 36 L.Ed.2d 714 (1973) ("Although every [plea bargain] has a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable attribute of any legitimate system which tolerates and encourages the negotiation of pleas."); *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970) (guilty plea to second degree murder in order to avoid possible death penalty after a trial on first-degree murder not compelled under Fifth Amendment); *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970) (plea not compelled merely because induced by fear of possible death penalty); *Brady v. United States*, 397 U.S. 742, 751, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747 (1970) ("We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged."); the Fourth Circuit concluded

> "that the choice presented to a defendant under U.S.S.G. § 3E1.1 by conditioning the availability of the section's two-level

---

**2.** Those cases not relying on *Corbitt*, *i.e.*, *Kleinebreil*, *Gordon*, and *Rogers*, merely state that a denied benefit is something different from a penalty. They are vulnerable to the criticism expressed in *Roberts v. United States*, 445 U.S. 552, 557 n. 4, 100 S.Ct. 1358, 1362 n. 4, 63 L.Ed.2d

622 (1980): "We doubt that a principled distinction can be drawn between 'enhancing' the punishment imposed upon the petitioner and denying him the 'leniency' he claims would be appropriate if he had cooperated."

reduction on the waiver of his Fifth Amendment right is more analogous to (and constitutionally indistinguishable from) the choice confronting the defendants in the plea bargain cases than to the choice faced by the plaintiffs in the public employment penalty cases."

*Fraizer,* 971 F.2d at 1084.

In reaching this conclusion, the court reasoned that the choice faced by a defendant seeking the acceptance of responsibility reduction, but wary of discussing relevant conduct beyond that charged in the indictment, was unlike the choice presented the plaintiffs in the penalty cases because the choice was merely "an 'incidental consequence' of a legitimate governmental practice of encouraging, through leniency in sentencing, both cooperation with law enforcement authorities and contrition on the part of the defendant." *Id.* Thus, the choice serves an important societal function of long-standing legitimacy; *viz.,* rewarding complete contrition on the part of a defendant because of its importance to his prospects of rehabilitation.

The Fourth Circuit also believed that the choice confronting a defendant seeking the two-level reduction in the sentencing process was "not 'likely to exert such pressure upon an individual as to disable him from making a free and rational choice.'" *Id.* at 1085 (quoting *Garrity v. New Jersey,* 385 U.S. 493, 497, 87 S.Ct. 616, 618, 17 L.Ed.2d 562 (1967)). Noting that the other circuits which relied exclusively on the penalty cases did not cite a single case from the plea bargain line of cases, the Fourth Circuit held that "the choice confronting defendants in appellant's position, even if difficult, is not a choice forbidden by the Constitution." *Id.* at 1087.

Although this question has been decided in most of the other circuits, this circuit, while having recognized the existence of the constitutional issue, has not yet decided it. *See Chambers,* 944 F.2d at 1270–71; *United States v. Herrera,* 928 F.2d 769, 774–75 (6th Cir.1991); *United States v. Guarin,* 898 F.2d 1120, 1122 (6th Cir.1990).

We now adopt the rationale of *United States v. Fraizer,* a well-balanced opinion reaching the conclusion that

> conditioning the acceptance of responsibility reduction on a defendant's waiver of his Fifth Amendment privilege against self-incrimination does not penalize the defendant for assertion of his right against self-incrimination in violation of the Fifth Amendment.

*Fraizer,* 971 F.2d at 1087. The merit of *Fraizer* is that its reasoning takes into account the sentencing process as it has developed historically, much as the Supreme Court in its plea bargaining cases took into account the history of plea bargaining. For centuries, judges have indulged the theory that a sentence imposed upon a defendant may be shorter if the defendant's rehabilitation looks more certain, and they have viewed confession and contrition as the first steps along the road to rehabilitation. *See Chambers,* 944 F.2d at 1270 (citing *United States v. Monsour,* 893 F.2d 126, 129 (6th Cir.1990)). Thus, defendants have frequently chosen the option of confessing to the court and delivering themselves to its mercy in an attempt to obtain an attenuated sentence. The mere fact that our new numbers-driven sentencing system now specifies the degree of attenuation possible as the reward for contrition should not be held to have made the sentencing calculus of a modern judge suddenly unconstitutional simply because it is more visible. Historically, the sentencing judge could withhold leniency if he believed that the defendant concealed the true scope of his crimes. The contemporary judge should retain that prerogative, it being no more unconstitutional now than it has been in history.

### III.

For the reasons stated, we **AFFIRM** the judgment of the district court.[3]

---

3. The Guidelines that became effective November 1, 1992, now provide that a defendant may

obtain the two-level reduction if he "clearly demonstrates acceptance of responsibility for *his offense....*" Application Note 1(a) now provides that

"A defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility...."

As the D.C. Circuit has noted, this amendment to the Guidelines "would appear to preclude the Fifth Amendment issue from arising in the future...." *United States v. Hicks,* 978 F.2d 722, 726 (D.C.Cir.1992).