27 F.3d 569
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Billy RODRIGUEZ, a/k/a Billy Valentin, Defendant-Appellant.
 No. 93-2307.
 United States Court of Appeals, Seventh Circuit.
 Argued April 27, 1994.
Decided June 20, 1994.
 
 Before ESCHBACH, COFFEY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Pursuant to a written plea agreement, Billy Rodriguez ("Rodriguez"), who prefers to be known as Billy Valentin, pleaded guilty to one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. Secs. 841(a)(1) and 846, and to one count of possession of approximately four kilograms of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). He was sentenced under the Career Offender provision of the Sentencing Guidelines. See U.S.S.G. Sec. 4B1.1. The district court determined that Rodriguez qualified for a two-level reduction in base offense level for acceptance of responsibility, U.S.S.G. Sec. 3E1.1(a), but that he did not qualify for an additional one-level reduction pursuant to U.S.S.G. Sec. 3E1.1(b) because he failed to notify the government that he intended to enter a guilty plea in time to spare the government the time and expense of preparing for trial. On appeal, Rodriguez challenges the court's refusal to reduce his offense level by one additional point under Sec. 3E1.1(b). We affirm.
 
 I. BACKGROUND
 A. Rodriguez's offense and guilty plea
 
 2
 On April 20, 1992, Rodriguez contacted John Raymond Alvarez and Joseph Crespo to arrange a multi-kilogram cocaine transaction to take place the following day at Alvarez's apartment on the north side of Chicago, Illinois. On April 21, 1992, Rodriguez, Alvarez, Crespo, and Hector Nunez, Jr. met at the apartment as agreed upon to deliver four kilograms of cocaine to an individual who, unbeknownst to them, was a confidential informant. In the meantime, agents of the United States Drug Enforcement Administration (DEA) set up surveillance outside. After Rodriguez displayed the cocaine to the informant, the DEA agents arrived and placed Alvarez, Crespo, and Nunez under arrest. Rodriguez somehow managed to elude them.
 
 
 3
 On May 13, 1992, a federal grand jury returned a two-count indictment charging Rodriguez, Alvarez, Crespo, and Nunez with conspiring to possess cocaine with intent to distribute in violation of 21 U.S.C. Secs. 841(a)(1) and 846 (Count One), and with possession of approximately four kilograms of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1) (Count Two). An arraignment date was set for May 20, 1992. When Rodriguez failed to appear, the district court issued a bench warrant for his arrest, and on September 1, 1992, Rodriguez was arrested. Counsel was appointed, and Rodriguez pleaded not guilty to both counts of the indictment.
 
 
 4
 Rodriguez's trial was set to begin on October 19, 1992. Three days prior to the commencement of trial, the district court struck the October 19, 1992 trial date, and instead set the case for a status hearing on that date. At the status hearing, Rodriguez's appointed counsel was granted leave to withdraw and newly-retained counsel filed their appearances on behalf of Rodriguez. The case was reset for trial on December 1, 1992, then continued until January 11, 1993.
 
 
 5
 On January 11, 1993, the date of trial, pursuant to a written plea agreement with the government Rodriguez withdrew his not guilty plea and entered a plea of guilty to Counts One and Two of the indictment. At the close of the guilty plea hearing, the district court accepted his plea and ordered the preparation of a presentence report. At Rodriguez's sentencing hearing, held on May 10, 1993, the district court determined that Rodriguez was career offender under U.S.S.G. Sec. 4B1.1, and set his base offense level at 37. The court also determined that a two-level reduction for acceptance of responsibility under U.S.S.G. Sec. 3E1.1(a) was appropriate, but that Rodriguez did not qualify for an additional one-level reduction pursuant to U.S.S.G. Sec. 3E1.1(b). Rodriguez's adjusted offense level was accordingly set at 35, yielding a sentencing range of 292 to 365 months imprisonment. Rodriguez was then sentenced to serve two concurrent 292-month terms in prison, to be followed by eight years of supervised release.[1]
 
 B. Rodriguez's sentencing hearing
 
 6
 At sentencing, the district judge asked the government and Rodriguez to address whether Rodriguez qualified for an additional one-level reduction in base offense level under Sec. 3E1.1(b),[2] pointing out that the timeliness of a defendant's acceptance of responsibility is the key consideration under either subsection (b)(1) or (b)(2) of that provision.[3] The government had agreed that in light of the Rodriguez's proffers of evidence, including his timely admission to the government that he had contacted co-defendant Alvarez for the purpose of obtaining kilogram quantities of cocaine, Rodriguez was entitled to a two-level reduction pursuant to Sec. 3E1.1(a).[4] The government opposed the additional one-point reduction under Sec. 3E1.1(b) on the grounds that it had been obligated to prepare for trial on two separate occasions, and that Rodriguez's guilty plea came on the eve of the second trial. Rodriguez's counsel responded that both he and co-counsel came to the case relatively late, implying that under the circumstances of the case, Rodriguez's guilty plea was as timely as possible. The judge then observed that the additional one-level reduction
 
 
 7
 is viewed essentially as a reward for sparing the government efforts or for special kinds of early assistance to the government, and it just doesn't fit here. So in any event, I appreciate your point, but I don't think that if you look at the way that this amended 3E1.1 reads, or if you look at the commentary--new Commentary 6--that has to do with that, in both instances the commentary says that timeliness means "early in the case." And I can't, I am not about to undercut the manner ... in which it's drafted, because I happen to think that is a misguided approach to the process. So I appreciate your comments, but I don't think that it's appropriate for a sentencing judge to bend, let alone break the rules.
 
 
 8
 (Sentencing Tr. at 13.)
 
 
 9
 Rodriguez's attorney argued that Rodriguez's acceptance of responsibility could be considered "timely," and that the government did not have to allocate a great deal of time or resources to preparing its case against Rodriguez. The district judge responded:
 
 
 10
 I confess that if what we are looking at were an arguable position, my tendency would be ... to grant that added level of relief. But there is no way in which the provision may be fairly read or the commentary may be fairly read to permit the court to apply the level simply because the court feels, as I do, that the number that comes out in all events is very hard, indeed harsh.... And I am not again about either to bend or break what is a clear provision, and it's clear what they mean by timeliness in having authored this new edition to the guideline. So I appreciate your argument, and I don't mean to minimize it, but it just doesn't fit this category.
 
 
 11
 (Sentencing Tr. at 15.)
 
 II. ANALYSIS
 
 12
 "[T]he clearly erroneous standard of review for findings of fact in the sentencing context is mandated by Congress." United States v. Tolson, 988 F.2d 1494, 1497 (7th Cir.1993) (internal quotations omitted). The statute and case law require that we "give due deference to the district court's application of the guidelines to the facts." United States v. Johnson, 997 F.2d 248, 255 (7th Cir.1993) (citing 18 U.S.C. Sec. 3742(e)) (internal quotations omitted). A district court's sentence is accordingly affirmed "if it results from a proper application of the Sentencing Guidelines to facts not found to be clearly erroneous." Tolson, 988 F.2d at 1497 (internal quotations omitted). " 'A question involving the interpretation of a Guidelines term, by contrast, is a matter of law subject to de novo review.' " United States v. Gio, 7 F.3d 1279, 1289 (7th Cir.1993) (quoting United States v. Cojab, 978 F.2d 341, 343 (7th Cir.1992)).
 
 
 13
 Section 3E1.1 of the Sentencing Guidelines permits a two-level reduction for acceptance of responsibility under subsection (a), and one additional level of reduction under subsection (b) if the defendant has assisted the authorities in the investigation or prosecution of his own misconduct by:
 
 
 14
 (1) timely providing complete information to the government concerning his own involvement in the offense; or
 
 
 15
 (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently.
 
 
 16
 U.S.S.G. Sec. 3E1.1(b).
 
 
 17
 Application Note 6 of the Commentary provides specific guidance concerning the construction of the term "timely:"
 
 
 18
 The timeliness of the defendant's acceptance of responsibility is ... context specific. In general, the conduct qualifying for a decrease in offense level under subsection (b)(1) or (2) will occur particularly early in the case. For example, to qualify under subsection (b)(2), the defendant must have notified authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so that the government may avoid preparing for trial and the court may schedule its calendar efficiently.
 
 
 19
 U.S.S.G. Sec. 3E1.1, comment. (n. 6).
 
 
 20
 Rodriguez argues that the district court wrongly concluded that it was without discretion to grant him an additional one-level reduction in base offense level under Sec. 3E1.1(b). He points to the district judge's expression of disagreement with the operation of the guideline and the harshness of the resulting sentence as evidence that the judge refused to exercise his discretion in the mistaken belief that the guideline allowed him no discretion to interpret the term "timely." This argument is inapposite. The district judge was correct in observing that, as a matter of law, he is precluded from giving a guideline term "less than [its] obvious meaning ... even where ... the result has harsh consequences." United States v. Poff, 926 F.2d 588, 593 (7th Cir.) (en banc ) (internal citation omitted), cert. denied, 112 S.Ct. 96 (1991). Indeed, a district court's failure to follow the Commentary to a guideline provision can constitute an incorrect application of the guideline, warranting reversal on appeal. See Stinson v. United States, 113 S.Ct. 1913, 1918 (1993); United States v. Salvador, No. 92-3458, slip op. at 4-6, 9 (7th Cir. Mar. 15, 1994); see also United States v. Seacott, 15 F.3d 1380, 1385 (7th Cir.1994) ("the sentencing guidelines tightly control the discretion of sentencing courts"). The district judge's statements at sentencing, rather than reflecting a misapprehension concerning the scope of his discretion in granting an additional reduction in base offense level pursuant to Sec. 3E1.1(b), demonstrate that the district judge recognized that he was bound by the clear meaning of the guideline provision and commentary, and that he carefully considered Rodriguez's arguments in favor of granting the reduction before declining to do so. It is equally clear that the district court gave the term "timely" its proper meaning. In construing the guideline provision, the court observed that it was applicable only in cases where the defendant had provided the government with "special kinds of early assistance," or made his intention to plead guilty known to the government early enough in the case to spare the government the expense of preparing to prosecute him.[5] This interpretation is entirely consistent with the plain language of the Guidelines and Commentary, and the applicable case law. See United States v. Robinson, No. 93-2128, slip op. at 6-7 (7th Cir. Mar. 25, 1994); United States v. Robinson, 14 F.3d 1200, 1203 (7th Cir.1994); United States v. Tello, 9 F.3d 1119, 1124-26 (5th Cir.1993).
 
 
 21
 Relying on Tolson, 988 F.2d at 1494, Rodriguez further contends that the government's position in agreeing to the two-level reduction for acceptance of responsibility under Sec. 3E1.1(a), but opposing an additional one-level reduction under Sec. 3E1.1(b), is inconsistent, since both subsections require a "timely" acceptance of responsibility. This argument is misplaced as well. In Tolson, the defendant challenged the district court's refusal to grant a two-level reduction for acceptance of responsibility pursuant Sec. 3E1.1(a). We upheld the district judge on the ground that his determination that the defendant's guilty plea on the morning of trial was not motivated by a genuine desire to accept responsibility for his criminal conduct, but was merely a calculated attempt to escape greater punishment, was not clearly erroneous. 988 F.2d at 1497-99. Our position in Tolson, to which we continue to adhere, is that "[t]he reduction for a timely acceptance of responsibility was not adopted with the idea that a defendant might lessen his or her sentence with a last minute, formalistic demonstration of remorse after the government has been forced to expend a great deal of time and resources in gathering an overwhelming case." Id. at 1499. In Rodriguez's case, by contrast, the government supplied an adequate foundation for its recommendation to the district court that Rodriguez be granted a two-level reduction for acceptance of responsibility despite the fact that his guilty plea came on the morning of trial. In particular, the government advised that court that
 
 
 22
 because of [Rodriguez's] proffers to the government, wherein he has admitted acting as the contact person for Mr. Alvarez, as the person who arranged for these four kilograms of cocaine to be delivered to Mr. Alvarez's house, that he has in fact within the meaning of the guidelines accepted responsibility for his criminal conduct and for the charges against him in this case.
 
 
 23
 (Sentencing Tr. at 10.)
 
 
 24
 In apprising the court of Rodriguez's admissions, the government thus called the court's attention to an appropriate factor to be considered in determining whether Rodriguez merited a two-level reduction under Sec. 3E1.1(a), namely, that Rodriguez had "truthfully admitt[ed] conduct comprising the offense(s) of conviction." U.S.S.G. Sec. 3E1.1, comment. (n. 1(a)). The government's position that Rodriguez did not, however, merit an additional one-level reduction in base offense level pursuant to Sec. 3E1.1(b) on the ground that he had failed to accept responsibility sufficiently early in the case to spare the government the burden of preparing to try him is therefore fully consistent with its recommendation that he nevertheless be granted the two-level reduction under Sec. 3E1.1(a). See Robinson, No. 93-2128, slip op. at 4, 6-7; Robinson, 14 F.3d at 1203; cf. Salvador, No. 92-3458, slip op. at 6 (where defendant expressed remorse only after trial, and presentence report did not provide any evidence of pre-trial conduct demonstrating acceptance of responsibility, district court erred in accepting probation officer's recommendation of two-level reduction pursuant to 3E1.1(a)) (emphasis supplied).
 
 
 25
 Furthermore, the district court did not abuse its discretion in refusing to grant the additional one-level reduction for a timely acceptance of responsibility under Sec. 3E1.1(b). As the government points out in its brief, the government filed two pretrial motions and an information pertaining to Rodriguez's previous state court conviction for possession of a controlled substance in anticipation of trying the case against Rodriguez on October 19, 1992.[6] Rather than going to trial on October 19, 1992, Rodriguez's appointed counsel was granted leave to withdraw, and newly-retained counsel filed their appearances. The trial was adjourned until the 1st of December 1992, then continued until January 11, 1993. A voir dire conference was conducted on January 8, 1993, and Rodriguez submitted a list of potential defense witnesses to the court on that date.[7] Although the government agreed that Rodriguez proffered evidence concerning his involvement in the conspiracy on several occasions in advance of trial, there is nothing in the record to indicate that the district court erred in concluding that Rodriguez communicated his intention to enter into a plea agreement with the government only one or two days before his second trial date.[8] The district court first learned of the existence of a plea agreement on the morning of trial, and expressed concern at the costs that had been incurred due to the fact that a jury had been summoned and was waiting outside the courtroom for the trial to begin.[9] Since Sec. 3E1.1(b) "is meant to reward early guilty pleas which enhance efficiency for the government, and for the court," Robinson, 14 F.3d at 1203, the district court's determination that the guideline provision was inapplicable to this case easily survives our deferential review under 18 U.S.C. Sec. 3742(e). See id. at 1202-03.
 
 
 26
 Because the district court's construction of U.S.S.G. Sec. 3E1.1(b) and the accompanying Commentary was sound as a matter of law, and the district court properly determined that the provision does not apply in a case where the defendant failed to communicate his desire to plead guilty until immediately before trial, we
 
 
 27
 AFFIRM.
 
 
 
 [1]
 Because Rodriguez's final judgment of conviction was entered on May 11, 1993, his notice of appeal was timely filed on May 21, 1993. See Fed.R.App.P. 4(b)
 
 
 [2]
 (Sentencing Tr. at 9.)
 
 
 [3]
 (Sentencing Tr. at 11.)
 
 
 [4]
 (Sentencing Tr. at 9-10.)
 
 
 [5]
 (Sentencing Tr. at 13.)
 
 
 [6]
 (R. at 84, 88, 87.)
 
 
 [7]
 (Plea Hr'g Tr. at 5.)
 
 
 [8]
 The plea agreement itself indicates that it was executed on January 11, 1993. (R. at 106.) We also observe that Rodriguez does not dispute the government's position that the information he supplied to the government in advance of trial concerning his role in the conspiracy was less than complete, and thus does not entitle him to a one-point reduction pursuant to U.S.S.C. Sec. 3E1.1(b)(1)
 
 
 [9]
 (Plea Hr'g Tr. at 2-4.)