81 F.3d 164
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond K. SHERMAN, Defendant-Appellant.
 No. 95-3650.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 1, 1996.
Decided March 20, 1996.
 
 1
 Before COFFEY and RIPPLE, Circuit Judges, and WALTER JAY SKINNER, District Judge.*
 
 ORDER
 
 2
 Raymond K. Sherman pled guilty to one count of possession of a sawed-off shotgun and was found guilty of violating of 26 U.S.C. § 5861(d).[1] The applicable sentence range mandated that he be incarcerated for 18 to 24 months. The district judge granted Sherman a downward departure of five levels pursuant to U.S.S.G. § 5H1.4. In doing so, he estimated that Sherman's weight was "well over 400 pounds,"[2] was found that it was "extraordinary in light of the weight of other people that usually appear before this court. Sherman, 53 F.3d at 785. Thus, based on the defendant's appearance and his own statements about his asthmatic condition, the court concluded that Sherman suffered from the "extraordinary physical impairment" of asthma, obesity, and hypertension. Id. Without even knowing in which BOP facility the defendant would be incarcerated, the sentencing judge further stated that from the "several prisoner rights cases ... involving asthmatics" that he had seen, the "prison officials seem not to be concerned about" the health needs of asthmatics. He further opined that:
 
 
 3
 when you look at the defendant and consider and look at his weight--and I can just imaging how hard his heart's pumping to get all that blood through his body--if he were ever to have an acute asthma attack in a prison setting in which [he] was not attended to quickly, the government would find themselves defending a lawsuit, and for failure to provide immediate and necessary medical attention.
 
 
 4
 Id. Finally, the judge noted that he too suffered from asthma and was aware of the effects that it can have on an individual. Id. Thus, the district court sentenced Sherman to two years probation.
 
 
 5
 The government appealed the sentence, arguing that the district court failed to make a record sufficient to establish that the defendant was entitled to the downward departure based on an extraordinary physical impairment. We reversed and remanded, holding that the defendant's "appearance and condition" were insufficient grounds upon which to grant a § 5H1.4 departure. Id. at 786. We instructed the sentencing judge that if he wished to persist in the downward departure, he would have to make "particularized findings," based on competent medical testimony, that Sherman in fact suffered from an extraordinary physical impairment, and that his particular medical needs could not be met if confined in an institution under the jurisdiction of the BOP. Id. at 786-88. We further held that the reasons for a departure, if granted, must be "of a type contemplated by the ... Guidelines, and based on a sufficiently sound factual foundation to justify a departure from the Guidelines." Id. at 785.
 
 
 6
 At resentencing, the court considered the testimony of Dr. Dinesh Doshi, a medical doctor in the ambulatory care clinic of Franklin Hospital, who examined the defendant Sherman, as well as letters from Dr. Kenneth P. Moritsugo, a doctor with the BOP, and David M. Hicks, the Chief Medical Designator of the BOP, each of whom had reviewed Sherman's medical records and determined that the defendant could adequately be cared for if incarcerated in a BOP facility.
 
 
 7
 Based upon Dr. Doshi's examination, the court found that Sherman suffered from asthma, probable fluctuation hypertension, degenerative joint disease, gastroesophageal reflux disease, possible congestive heart failure, and morbid obesity, and that in combination, these conditions constitute an extraordinary physical impairment. Based upon the evidence received at the resentencing hearing, the judge also found that the BOP was capable of caring for the defendant's medical needs, all of which were controllable by medication.
 
 
 8
 On remand, after the sentencing hearing, the defendant was sentenced to serve a term of 18 months imprisonment, to be followed by three years of supervised release, and was ordered to pay a $50 special assessment. Sherman appeals his sentence, including the denial of the downward departure. We AFFIRM.
 
 I. DISCUSSION
 
 9
 Sherman argues that the appellate court exceeded its authority in our prior decision when we held that the district judge was required to find, based on specific medical testimony, that the BOP was incapable of caring for the defendant's medical needs, before granting a § 5H1.4 departure. Sherman maintains that the clear and unambiguous language of § 5H1.4 carries no such requirement, and that we overstepped our bounds when we imposed such a "flat mandate." The defendant, in a previous petition for re-hearing and suggestion for re-hearing en banc, made the same argument. We saw no merit in his petition, and refuse to revisit the same issue on this appeal.
 
 
 10
 The defendant's second argument is that the sentencing judge erred when he concluded that the BOP could properly care for him were he to be incarcerated. "We will not reverse factual determinations underlying the application of the guidelines unless they are clearly erroneous." United States v. Ritsema, 31 F.3d 559, 564 (7th Cir.1994) (citation omitted). A finding is clearly erroneous when we are "left "with the definite and firm conviction that a mistake has been committed." United States v. Cojab, 978 F.2d 341, 343 (7th Cir.1992) (quotation omitted). "[A] factfinder's choice between two permissible choices cannot be clearly erroneous." United States v. Francis, 39 F.3d 803, 812 (7th Cir.1992) (quotation omitted).
 
 
 11
 At the initial hearing, Sherman submitted a February 1994 Report of the United States General Accounting Office which found that federal inmates with chronic illnesses receive inadequate care and treatment in BOP facilities. Sherman, 53 F.3d at 786, n. 7. At the resentencing hearing, the government produced evidence more than sufficient to support the sentencing judge's conclusion that the BOP could adequately care for Sherman's medical needs. Two members of BOP's medical personnel, a medical doctor and the Chief Medical Designator, individually reviewed Sherman's records and determined that were he to be incarcerated, the BOP had medical facilities and personnel capable of caring for his health related needs. Most telling, as we pointed out in our original opinion, Sherman went through an entire year before sentencing without having seen a doctor, nor taken any medication for his asthma, obesity or hypertension. Id. at 787.
 
 
 12
 The district court, after hearing the testimony and arguments, concluded that although incarceration would be stressful for the defendant, he would receive medication for his asthma when necessary while confined. We also note that in all probability, he will be placed on a diet which will also help control his weight problem, as well as serve to diminish if not alleviate his asthmatic and hypertensive symptoms. The judge's findings were based on competent medical evidence, and were therefore, not clearly erroneous.
 
 
 13
 AFFIRMED.
 
 
 
 *
 Hon. Walter Jay Skinner, United States District Judge for the District of Massachusetts, is sitting by designation
 
 
 [1]
 See, United States v. Sherman, 53 F.3d 782 (7th Cir.1995), for a more thorough recitation of the facts pertaining to Sherman's condition, conviction, and original sentence
 
 
 [2]
 At the sentencing hearing, Sherman testified that he weighed between 420 and 450 pounds. The probation officer who prepared his Presentence Investigation Report attempted to confirm the defendant's weight, but was unable to do so because Sherman's mass exceeded the limits of traditional scales. Id. at 784