47 F.3d 1171
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arturo Arsenio GUILLOT (93-2573), Ivan Lozano (93-2574),
Ramon Paula Castro (94-1007), Wilfredo Rodriguez (94-1008),
David Bernal (93-2582), Armando Williams (93-2593 &
93-2595), Salvadore Fuentes (93-2572), Santos Peinado
(94-1009) and Manuel Barajas (94-1010), Defendants-Appellants.
 Nos. 93-2572 to 93-2574, 93-2582, 93-2593, 93-2595 and
94-1007 to 94-1010.
 United States Court of Appeals, Sixth Circuit.
 Feb. 22, 1995.
 
 Before: RYAN and SILER, Circuit Judges; and DOWD, District Judge.*
 PER CURIAM.
 
 
 1
 This case began with an indictment filed on February 18, 1993 charging 15 defendants with one count of conspiracy to possess with intent to distribute and to distribute more than 5 kilograms of cocaine. Following a ten-day jury trial, nine of the defendants were convicted and subsequently sentenced to varying terms of imprisonment.[1] The appeals of each of the nine defendants have been consolidated.
 
 
 2
 Each of the defendants prosecutes an appeal attacking their convictions on the basis of alleged violations of Batson v. Kentucky, 476 U.S. 79 (1986) and Brady v. Maryland, 373 U.S. 83 (1963). Additionally the defendant-appellant Fuentes appeals his sentence on the grounds that the Sentencing Guidelines were applied in error.
 
 
 3
 I. The Batson Issue.
 
 
 4
 In the selection of the jury the district court gave to the defendants 15 preemptory challenges and the government 8 challenges. The strike method was employed. After the strikes had been exercised, the court inquired of counsel whether there were any Batson problems and the defendants challenged the government's use of a preemptory challenge of a female juror by the name of Rose Rodriguez. The court, without requiring a prima facie showing of a Batson violation, requested that the government give its explanation for the use of the challenge. The Assistant United States Attorney responded by referring to her style of dress, her apparent lack of education, her employment as a factory worker and the fact that her husband was a truck driver as the reasons for the exercise of the strike. The Assistant United States Attorney also questioned whether she was an Hispanic, asserting that she did not appear to have Hispanic features.
 
 
 5
 The court then questioned Rose Rodriguez and she revealed that she was married to an Hispanic, but did not consider herself to be Hispanic. The record demonstrates that Rose Rodriguez was the only possible Hispanic juror on the panel.
 
 
 6
 A Batson violation in the context of equal protection occurs when preemptory challenges are used to exclude members of a cognizable racial group solely on the basis of their race. Cf. Powers v. Ohio, 499 U.S. 400 (1991). United States v. McCoy, 848 F.2d 743, 745 (6th Cir.1988) sets forth the procedure to be followed when a Batson violation is alleged. A defendant who claims a Batson violation must prove (1) that the defendant is a member of a cognizable racial group; (2) that the prosecutor has exercised peremptory challenges against members of the defendant's race; and (3) that the relevant circumstances raise an inference of purposeful discrimination. McCoy also teaches that if the defendant can make out a prima facie case, the prosecutor must then present a neutral explanation for having excluded the juror. Hernandez v. New York, 500 U.S. 352 (1991) goes beyond the McCoy opinion and addresses appellate review of a trial court's decision denying a Batson challenge. Hernandez teaches that the trial court's decision in ruling on a Batson challenge is entitled to great deference and applies a clearly erroneous standard of review.
 
 
 7
 Assuming, without deciding that a single strike of a prospective juror in a protected class is sufficient to establish a prima facie case of a Batson violation, and further assuming that a non-Hispanic married to a Hispanic falls into the protected class, we find that the district court's refusal to deny the government's exercise of the preemptory challenge of Rose Rodriguez was not clearly erroneous.
 
 
 8
 II. The Brady Issue.
 
 
 9
 Following their convictions, the defendants moved the court for dismissal of the charges or for a new trial because the government had failed to disclose all evidence favorable to the defendants material to issues of guilt. Brady v. Maryland, 373 U.S. 83 (1976) holds that a prosecutor's suppression of evidence favorable to a defendant who has requested it amounts to a violation of due process where the evidence is material either to guilt or punishment.
 
 
 10
 The alleged Brady violation relates to the failure of the prosecution to identify William Echenique as a person who would connect Maria Ramirez-Cantillo, a major government witness, to the business of selling cocaine in the time period of 1987-1988. The indictment identified Julio Jorge Cantillo and Maria Ramirez as unindicted co-conspirators engaged in the cocaine conspiracy with the named defendants. Maria Ramirez-Cantillo testified as a government witness. She indicated that she met Julio Jorge Cantillo in September of 1989 and thereafter married him. She resigned from her position with the Board of Education for Grand Rapids and began assisting him in his cocaine distribution business. She indicated that she drove her husband to the sites of cocaine transactions, helped count money and recorded drug transactions in a notebook. The notebook was subsequently seized pursuant to the execution of a search warrant. Maria Ramirez-Cantillo identified the recorded drug transactions in the notebook which incriminated many of the convicted defendants. She denied that she engaged in any of the cocaine transactions beyond the assistance she provided to her husband.
 
 
 11
 The defendants contend that they learned for the first time after the convictions but prior to sentencing that Maria Ramirez-Cantillo was subject to "ripe and fruitful" impeachment. One of the defendant's counsel, Jeff O'Hara, obtained the transcript of the grand jury testimony of a William Echenique in the case of United States v. Kevin Freeman, Case No. 1:93:CR:5 in the Western District of Michigan. The defendants contend that Echenique indicated in questioning before the grand jury that he was buying cocaine in Grand Rapids from Maria Ramirez-Cantillo in the following exchange of testimony:
 
 
 12
 Q: What happens next? What did you do for getting your cocaine?
 
 
 13
 A: After that I also have sources here in Grand Rapids.
 
 Q: That you were obtaining cocaine from:
 
 14
 A: Yeah, I was buying.
 
 
 15
 Q: What quantities were you buying here in Grand Rapids?
 
 
 16
 A: I was buying in Grand Rapids in half kilos and also small quantities.
 
 
 17
 Q: Half kilos from him?
 
 
 18
 A: From Maria. I don't know her last name; but she owns J & B Jewelry Store, and I was buying half kilos from her every three, four days. That lasted for--(emphasis added).
 
 
 19
 Q: When?
 
 
 20
 A: That was back in '87, '88, around there. I also purchased drugs from Poochie. I don't know his last name. He's a cuban male.
 
 
 21
 (R-309)
 
 
 22
 The defendants moved for Brady material in a manner that clearly included impeachment evidence of major government witnesses.
 
 
 23
 The district court summarily denied the motion for dismissal or new trial using language found in cases deciding motions for new trial asserting newly discovered evidence. Specifically, the court declared there to be "an abundance of evidence from which a jury could reasonably find each of the defendants guilty beyond a reasonable doubt."
 
 
 24
 The prosecution suggests in its appellate brief that the Assistant United States Attorney trying this case was unaware of the Echenique testimony in a separate case; that the Echenique testimony was not necessarily relating to Maria Ramirez-Cantillo because the name of the store as described by Echenique was not precisely the name of the store operated by Cantillo and that the alleged impeaching testimony of Echenique fails to meet the "evidence is material test" to be applied to Brady materials as set forth in United States v. Presser, 844 F.2d 1275, 1281 (6th Cir.1988). Presser teaches that the withheld evidence violates Brady only if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. Presser, in reliance on Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987), defines a "reasonable probability" as a probability sufficient to undermine confidence in the outcome.
 
 
 25
 In our analysis, we note that the defendants offered the testimony of Sergeant William Weston of the Kent County Sheriff's Department that another person, Natalia Rangel, had purchased cocaine from Maria Ramirez-Cantillo. Moreover, Maria Ramirez-Cantillo indicated in her direct testimony that she had been convicted in state court of a cocaine offense and was facing five years in prison. See, Joint Appendix, p. 200.
 
 
 26
 We interpret the district court statement regarding the reliability of the verdict as being a finding that the Echenique grand jury testimony was not material because there was not a reasonable probability that the outcome of the trial would have been different. We agree that the grand jury statement is not material and therefore the due process rights of the defendants were not violated.[2] Rather, applying the teachings of Presser, we find on a review of the record that the district court's denial of the defendants' motion for a new trial did not constitute an abuse of discretion.
 
 
 27
 We find no error in the convictions of the defendants-appellants Guillot, Lozano, Castro, Rodriguez, Bernal, Williams, Fuentes, Peinado and Barajas. Only the defendant-appellant Fuentes challenges his sentence. Therefore, the convictions and sentences of Guillot, Lozano, Castro, Rodriguez, Bernal, Williams, Peinado and Barajas are AFFIRMED.
 
 
 28
 III. The Challenge of the Defendant Salvador Fuentes to his sentence.
 
 
 29
 The defendant Fuentes challenges the guideline calculations in connection with his sentence to a term of imprisonment of seventy-eight months. The district court found that the amount of cocaine attributable to Fuentes was in excess of 500 grams and less than 2 kilograms and fixed the offense level at 26 in accordance with the sentencing table. Two levels were added for the use of a firearm. Fuentes filed timely objections to the amount of cocaine attributable to him and the addition of the two levels for the use of a firearm. He also contended that he should have received a reduction of two levels for being only a minimal participant in the conspiracy.
 
 A. The Cocaine Attributable to Fuentes
 
 30
 The district court, consistent with the Pre-Sentence Report, found that the amount of cocaine attributable to Fuentes was 1.82 kilograms. Fuentes objected and argued that the amount was less than 500 grams, i.e. 396 grams and thus the offense level should be 22. (See Appendix, page 293.)
 
 
 31
 The defendant Fuentes is unable to demonstrate that the factual finding of the district court was clearly erroneous. The district court observed that documentary evidence demonstrated that the cocaine attributable to Fuentes exceeded 500 grams and the testimonial evidence, which included the testimony of Julio Jorge Cantillo that the district court found to be credible, indicated that Fuentes had a kilogram of cocaine stored at this his home during the conspiracy.
 
 
 32
 After hearing out Fuentes' counsel during the sentencing hearing, the district court declared:
 
 
 33
 Well, I understand what you're saying, Mr. Phelan. The court is going to give credit to the testimony of the witness, and the witness testified that one kilogram of cocaine was found at--was secured from the residence of Mr. Fuentes. In addition thereto, the drug records are in evidence, the Court gives credit to those records. And the court is of the opinion that independently of the drug records your client falls within the range, and independently of the testimony your client falls within the range he's being charged with. And the combination of the two, he's surely within that range. So the court finds that it is reasonable to charge your client with 1.82 kilograms of cocaine. (Joint Appendix, page 302).
 
 
 34
 Our review of the record clearly demonstrates the existence of evidence and testimony that supports the district court's findings. The defendant's reliance on United States v. Robinson, 898 F.2d 1111, 1115-16 (6th Cir.1990) is misplaced.
 
 
 35
 In Robinson, the witness on whom the district court relied for determining the quantity of the drugs involved was found, on appellate review, to be unreliable. Fuentes argues that because one of the defendants was acquitted in a trial setting where there was an absence of drug record documentation, the testimony of the witness on whom the district court relied should be discounted and declared not sufficiently reliable or credible to support the district court's factual finding. We find neither the district court's credibility determination as to the witness Julio Jorge Cantillo nor the district court's reliance on the drug records maintained by Maria Ramirez-Cantillo to be clearly erroneous. Cf. United States v. Nelson, 922 F.2d 311, 315-316 (6th Cir.1990), cert. denied, 499 U.S. 981 (1991); United States v. Clemons, 999 F.2d 154, 156 (6th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 704 (1994). Consequently, the challenge of Fuentes as to the amount of cocaine attributable to him fails.
 
 
 36
 B. The Enhancement for the Use of a Firearm.
 
 
 37
 The district court enhanced the offense level by two levels because of the determination that Fuentes had displayed a firearm during the conspiracy in connection with the collection of a drug debt as testified to by Julio Jorge Cantillo, an unindicted member of the conspiracy. Cantillo related the firearm incident during cross-examination. U.S.S.G. Sec. 2D1.1(b)(1) provides for the enhancement of the offense level by two if a firearm was possessed during the conspiracy. Fuentes argues that the district court erred in the enhancement because the testimony of Cantillo was unsupported in any way. Again, the district court made a specific finding as to the credibility of Cantillo as he stated:
 
 
 38
 Well, the Court recalls that testimony, and that incident happened in connection with this conspiracy. It involved the collection of a drug debt, and a gun was drawn, according to the testimony, the sworn testimony that's on the record. The jury apparently found credible Mr. Cantillo's testimony regarding other matters. The court heard that testimony, and the Court heard the testimony regarding the handgun. The court believes that testimony credible, and the Court believes that the additional two-point enhancement is appropriate. (See, Joint Appendix, page 304)
 
 
 39
 The defendant's challenge to the enhancement for possession of a firearm during the conspiracy is denied.
 
 
 40
 C. Role in the Offense.
 
 
 41
 The cocaine conspiracy involved 14 persons according to the government. The issue raised by Fuentes is anchored in the proposition that he was entitled to a two level reduction as a "minor" participant in the context of U.S.S.G. Sec. 3B1.2. Fuentes makes the claim based on the amount of cocaine attributable to him in comparison with the co-conspirators. He limits the comparison to the other nine defendants, Arturo Arsenio Guillot (15 to 50 kilograms), Ivan Lozano (15 to 50 kilograms), Ramon Paula Castro (15 to 50 kilograms, Santos Peinado (3.73 kilograms), Julio Villego (3.5 kilograms), Manuel Barajas (3.4 kilograms), Armando Williams (3 kilograms), David Bernal (1.35 kilograms), and Wilfredo Rodriguez (14.16 grams) and concludes that because only 1.82 kilograms of cocaine was attributed to him, he was less culpable than all but two of the persons associated with the criminal drug conspiracy. The government's brief in support of the district court's findings concedes that Fuentes was less culpable than co-defendants Guillot, Lozano and Castro as they were involved in supplying the cocaine from Miami to Julio Jorge Cantillo, but argues that the convicted co-defendants Peinado, Barajas, Williams, Bernal and Rodriguez were cocaine distributors for Cantillo as was the defendant Fuentes. The cocaine attributable to the cocaine distributors for Cantillo ranged from 3.73 kilograms to 14.16 grams. In denying Fuentes' claim for a two level reduction as a minor participant the district court declared:
 
 
 42
 And the commentary says that this section provides a range of adjustments for a defendant who plays a part in committing the offense and makes him substantially less culpable than the average participant. The word is "substantially." In this particular case the drug records show he's involved to the tune of $30,000, plus the additional cocaine, the kilogram. Plus we have the testimony of him packing a handgun in connection with this drug transaction. That doesn't make him substantially less culpable. The court's going to deny your request for a two point reduction. (See, Joint Appendix, page 306).
 
 
 43
 The district court's denial of Fuentes' request for a two level reduction as a minor participant was not clearly erroneous.
 
 
 44
 In sum, we find that the sentence of Fuentes was carefully considered by the district court and is not clearly erroneous in any respect. Therefore, the conviction and sentence of defendant-appellant Fuentes is AFFIRMED.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The defendant-appellants include: Arturo Arsenio Guillot (sentenced to 235 months), Ivan Lozano (sentenced to 97 months), Ramon Paula Castro (sentenced to 168 months), Wilfredo Rodriguez (sentenced to 12 months and one day), David Bernal (sentenced to 63 months), Armando Williams (sentenced to 110 months), Salvadore Fuentes (sentenced to 78 months), Santos Peinado (sentenced to 121 months) and Manuel Barajas (sentenced to 110 months)
 
 
 [2]
 In our view, we need not address whether the Brady obligations extend as far as suggested by the defendants in this case. Moreover, we note that the district court denied the motion for a new trial without giving the government the opportunity to respond and so we do not have a record that would provide for an in-depth discussion of the Brady disclosure obligations facing Assistant United States Attorneys with regard to potential impeaching evidence developed in other prosecutions being handled in the same U.S. Attorney's Office